

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                    :
MJX PLUS LLC and                                    :      Civil Action No. 08Cv10931 (TPG)
MJX SPECIAL OPPORTUNITIES LLC,                      :
                                                    :
                              Plaintiffs,           :      AMENDED COMPLAINT
                                                    :
            -against-                               :
                                                    :
CITIGROUP INC., CITIBANK, N.A.,                     :
CITIGROUP ALTERNATIVE                               :
INVESTMENTS LLC,                                    :
and FALCON STRATEGIES TWO LLC,                      :
                                                    :      JURY TRIAL DEMANDED
                              Defendants.           :
                                                    :
------------------------------------------------------------x

Plaintiffs, MJX Plus LLC and MJX Special Opportunities LLC (sometimes collectively

referred to as "Plaintiffs"), by their attorneys, Dornbush Schaeffer Strongin & Venaglia, LLP,

allege, as to themselves, on personal belief of their members and employees, and, as to all other

matters, allege on information and belief based upon investigation conducted by counsel,

including a review of the Offering Memorandum, Offering Memorandum Supplement, other

publicly-made financial disclosures, an Administrative Agency Agreement, other documents,

and communications between the parties, as follows:

## NATURE OF THE ACTION

1.      This action arises out of certain false, fraudulent and misleading statements and

material omissions made by Defendants in, among other things, Defendant Falcon Strategies

Two LLC's ("Falcon," the "Falcon Fund," or the "Fund") Offering Memorandum, Offering

Memorandum Supplement, the Falcon Fund's investment brochure entitled, *FALCON: Falcon*

*Strategies, Structured Alternative Investments* (the "Falcon Fund Brochure"), and promotional

materials (collectively, the "Offering Documents"), and yearly financial statements, quarterly

investor reports, and monthly risk reports, as well as in numerous conversations between

representatives for the parties in connection with Plaintiff MJX Plus' investment of

$50,000,000.00 in Defendant Falcon's structured alternative investment fund.  This action also

arises out of numerous false, fraudulent and misleading oral and written statements made by

Defendants directly to Plaintiffs, and Plaintiff MJX Plus LLC's ("MJX Plus") managing

member, members, representatives and employees from in or about June 2007 through in or

about March 2008, concerning Plaintiff MJX Plus' investment in Defendants' Falcon Fund,

specifically including, but not limited to, the highly risky and volatile investments made by the

Fund, which were contrary to the representations made by Defendants before and after Plaintiff

MJX Plus invested  in the Fund.  Plaintiffs reasonably relied on such false, fraudulent and

misleading statements and material omissions in deciding to invest in Falcon and, thereafter,

maintain their investment in Defendants' Falcon Fund and, as a result, suffered significant losses,

including a capital loss of approximately $29,000,000.00.  Additionally, this action arises out of

Defendant Citibank, N.A.'s ("Citibank") failure to follow Plaintiffs' investment reallocation

instructions in direct breach of the administrative agency agreement between the parties.

        2.      Prior to investing in Falcon, MJX Plus' managing member and members had, for

a number of years, conducted numerous financial transactions with, and were clients of,

Defendants Citigroup Inc. ("Citi") and Citibank.  Since in or about 1996, Plaintiff MJX Plus'

managing member and members have relied upon the advice and investment expertise of

Defendants' sophisticated, highly trained representatives and financial advisers in making certain

investment decisions.

188748.4

3.      In or about April 2005, Defendants presented Plaintiff MJX Plus with an

opportunity to invest in Falcon, Defendants' purportedly low-risk, highly liquid investment

portfolio with an investment horizon of at least five years.  Defendants further informed MJX

Plus that Defendants would structure the proposed transaction for MJX Plus, and secure any

additional parties needed to complete Plaintiff's investment.

4.      Plaintiff MJX Plus reviewed the various representations made by Defendants Citi,

Citibank, Citigroup Alternative Investments LLC ("Citigroup Alternative"), and Falcon orally,

and in the Offering Documents.  Such written and oral pre-investment disclosures contained,

among other things, (a) general descriptions of the various investment portfolios or strategies that

comprised the Falcon Fund and the risk-adjusted, low volatility, liquid and long-term nature of

investing in the portfolios, and (b) detailed information concerning the Defendants'

knowledgeable and experienced management team and investment advisers and their strategy for

achieving the Fund's performance goals while closely managing and monitoring risks pursuant

to purported risk management and investment guidelines.

5.      After reviewing the representations made by Defendants orally and in their

disclosure materials, and with written assurances from Defendants, by way of an administrative

agency agreement between Plaintiffs and Defendant Citibank, that Defendant Citibank would

actively manage Plaintiffs' investment in Falcon, Plaintiffs invested $50,000,000.00 in the

Falcon Fund and engaged Defendant Citibank to serve as Plaintiff MJX Plus' administrative

agent for its Falcon Fund investment.

6.      In addition to its initial $50,000,000.00 investment in the Falcon Fund, Plaintiff

MJX Special Opportunities LLC ("MJX Special") paid Defendant Citibank a structuring fee of

$500,000.00 for structuring the transaction in which Plaintiff MJX Plus invested in Falcon, and

188748.4

quarterly fees of .05% (.20% annually) of the then quarter-end market value of Plaintiff MJX

Plus' entire investment portfolio, including its share in the Falcon Fund. MJX Plus also paid

monthly management fees to Citigroup Alternative in the amount of .25 % (3% annually) of the

value of MJX Plus' Falcon Fund investment.

7.    At all times during the period of MJX Plus' investment in the Falcon Fund,

Defendants bore the sole responsibility of expertly and attentively monitoring and managing

Plaintiff's investment in Falcon. As set forth in greater detail above (and below), Plaintiffs paid

Defendants Citibank and Citigroup Alternative significant fees for the benefit of having

Plaintiffs' investment in Falcon managed by the same experts that had created the Fund.

8.    From in or about October 2005 through in or about May 2007, MJX Plus received

(with some exceptions) various post-investment written reports and statements from Defendants

concerning the Fund and MJX Plus' investment in the Falcon Fund. Such post-investment

written reports and statements included:

(a) Monthly reports titled *Falcon 2 Risk Reports: Sub-Fund Guidelines*

*Compliance Test* which, in or about June 30, 2008, were renamed *Falcon Strategies Two LLC*

*Series 2008-1C Monthly Risk Report* (collectively, "Risk Reports"). (A copy of Defendants'

January 27, 2006 Risk Report, illustrative of the Risk Reports received by MJX Plus during the

term of its investment in Falcon, is annexed as Exhibit 1);

(b) *Falcon Strategies Two LLC Quarterly Investor Reports* ("Quarterly

Report(s)"). (A copy of Defendants' March 31, 2007 Quarterly Report is annexed as Exhibit 2);

and

(c) Yearly financial statements. (A copy of Defendants' December 31, 2005

financial statement is annexed as Exhibit 3.)

188748.4

9.    Although the post-investment written reports and statements did provide MJX Plus with general information concerning the Fund's limited number of portfolios and strategies, objectives, performance and outlook, significantly, such reports and statements did not provide MJX Plus with information regarding the specific investments made by the Fund. Such detailed and specific information, which was, at all times relevant to this Amended Complaint, within Defendants' possession and/or knowledge, was not disclosed to Plaintiffs. Nor was such information reasonably available to Plaintiffs.

10.    In any case, MJX Plus engaged Defendant Citibank as its administrative agent for which Citibank was paid considerable fees, and MJX Plus paid significant monthly management fees to Defendant Citigroup Alternative as the Fund's managing agent for the benefit and security of having Defendants' sophisticated management experts manage Plaintiffs' investment in the Fund. MJX Plus believed that Defendants would expertly manage and maximize MJX Plus' investment in Falcon, including the monitoring and management of the Fund's specific investments, while adhering to the risk guidelines referenced in Defendants' pre-investment disclosures and post-investment reports and statements. In short, in light of, among other things, the representations made in the Offering Documents regarding the low risk, low volatility, liquid, long-term, closely managed nature of investments in the Fund, Defendants' investment management expertise, and the considerable fees that Plaintiffs were paying to Defendants to manage MJX Plus' investment in the Fund, MJX Plus reasonably relied on Defendants to be aware of and to closely monitor and manage the Fund's day-to-day operations and its specific investments. Furthermore, as alleged below, when Plaintiffs did request more detailed information regarding the Fund's investments, Defendants provided Plaintiffs with false information.

188748.4

11.     For the first approximately eighteen (18) months of MJX Plus' investment in

Falcon, Plaintiffs, given, among other things, (a) the performance of the Fund, (b) the limited

information provided to them, and (c) Plaintiffs' reliance on the expertise of Defendants, had no

reason to question Defendants regarding the Fund's investments and Defendants' management of

the Fund.  However, in or about June 2007, almost two-years after investing in Falcon, MJX

Plus, upon observing an alarming trend within the overall financial sector with respect to

securities backed by high-risk, hybrid adjustable rate mortgage investments and investments in

subprime mortgage backed securities and the declining performance of MJX Plus' investment in

the Fund, contacted Defendants' senior investment officers, and the leader of Citi's fixed income

alternatives team to inquire about Falcon's exposure to such high-risk investments, and to

determine if MJX Plus should redeem or withdraw its investment in the Falcon Fund.   Citi's and

Citigroup Alternative's senior investment personnel alleviated MJX Plus' concerns.  Citi and

Citigroup Alternative personnel informed MJX Plus that the average credit rating of Falcon's

book was AA, and that the Falcon Fund's exposure to negatively performing, highly volatile,

high risk mortgage backed securities investment vehicles was minimal.  Citi's and Citigroup

Alternative's senior representatives further stated that only $200 million of the Falcon Fund's

$16 billion total value was invested in subprime mortgage backed securities, 95% of which were

rated AAA, with one rated AA, and one A.   Based on Defendants' assurances, Plaintiff MJX

Plus elected not to redeem or withdraw its Falcon Fund investment.

12.     However, subsequent to Defendants' representations, MJX Plus continued to

observe the collapse of the U.S. subprime mortgage market, and a sharp decline in Falcon's

performance, and an unacceptable decline in the value of MJX Plus' Falcon Fund investment.

188748.4

13.     From on or about August 2007 through on or about November 2007, Plaintiffs, on several occasions, (a) informed Defendants of Plaintiffs' dissatisfaction with Falcon's performance and questioned Defendants' management of the Falcon Fund, (b) demanded that Defendants inform Plaintiffs of the Falcon Fund's exposure, if any, to highly volatile high risk mortgage backed securities investments, and (c) advised Defendants that Plaintiff MJX Plus would take affirmative steps to minimize MJX Plus' losses, including altering its investment in Falcon to reduce its exposure to Defendants' negatively performing investments, and withdrawing or redeeming its investment in Falcon.

14.     During the aforementioned period, Defendants, in meetings and numerous telephone conversations between their senior investment advisers and Plaintiff MJX Plus' managing member, members and representatives, continually advised MJX Plus that there was no significant risk to the Falcon Fund's investment portfolios from the ongoing subprime mortgage market collapse, and that the value of MJX Plus' investment in Falcon would return by, no later than, the first quarter of 2008. Defendants further advised MJX Plus that based upon Defendants' management of the Falcon Fund, it would be unwise for MJX Plus to redeem or withdraw its investment in Falcon. MJX Plus had no means by which it could verify the accuracy of Defendants' oral representations as Defendants did not make available written documentation detailing the investments made by the Falcon Fund. Such information was solely within Defendants' peculiar knowledge.

15.     Plaintiff MJX Plus, based upon the aforementioned advice of, and assurances made by, Defendants' purportedly highly trained, sophisticated, and successful investment professionals, reasonably relied upon Defendants' statements, and elected to maintain its

188748.4

investment in Falcon. Convincing MJX Plus to do so allowed Defendants to continue to receive significant monthly and quarterly fees.

16.    However, on or about December 6, 2007, Defendants, in a meeting with MJX Plus' representatives, finally admitted to MJX Plus that, contrary to Defendants' prior representations concerning the extent of Falcon's investment in subprime mortgage backed securities and the strength of Falcon's investment portfolio in general, Falcon held approximately $500 million worth of assets in highly volatile, high-risk mortgage backed securities (2½ times as much as the $200 million that Defendants had represented just six (6) months before), and in addition to this high-risk exposure, Falcon had a large block of its assets invested in high-risk hybrid adjustable rate mortgage securities and subprime mortgage backed securities.

17.    At no time prior to Defendants' disclosure, on or about December 6, 2007, was MJX Plus aware of, or did MJX Plus have the ability to reasonably ascertain, through the use of information made available by Defendants to Falcon investors, the extent of the Falcon Fund's exposure to the aforementioned high risk, highly volatile investments, or the extent that Defendants had invested MJX Plus' $50,000,000.00 in a manner contrary to that set forth in Defendants' written and oral disclosures. Again, such detailed information concerning the specific investments that made up Falcon's portfolios and strategies were at all times within Defendants' peculiar knowledge. Had MJX Plus known, prior to Defendants' December 6, 2007 disclosure, of the true extent of MJX Plus' exposure due to Falcon's high risk, and highly volatile investments, and not relied on the ongoing, and continued pattern of false and misleading statements made by Defendants, MJX Plus would have elected to withdraw or redeem its investment, or, at least, alter its investment in the Falcon Fund to reduce or eliminate MJX Plus'

188748.4

exposure to these negatively performing, highly volatile, high-risk investments. In fact, to this day, MJX Plus still has not received from Defendants, and is not otherwise aware of, the specific investments made by the Fund.

18.     Soon after Defendants' disclosure, MJX Plus, in an effort to stem the continued loss in value of its Falcon Fund investment, directed Defendants, pursuant to an administrative agency agreement between Plaintiffs (and others) and Citibank, to reallocate MJX Plus' investment in Falcon. Defendants confirmed receipt of MJX Plus' explicit reallocation instructions, and advised MJX Plus that such changes would be made no later than January 2, 2008. However, Defendants (a) failed to adhere to MJX Plus' instructions and make the requested changes, and (b) failed to monitor and periodically rebalance MJX Plus' investment in Falcon to establish and maintain the allocation percentages specified by MJX Plus, thereby breaching the administrative agency agreement between the parties, and causing MJX Plus further financial losses. On February 21, 2008, Plaintiffs terminated the administrative agency agreement and removed Citibank as administrative agent of MJX Plus' Falcon Fund investment.

19.     Upon information and belief, Defendants were unable and/or never intended to strictly adhere to MJX Plus' investment allocation instructions and periodically rebalance MJX Plus' investments consistent with MJX Plus' reallocation instructions.

20.     In meetings, telephone conversations and email correspondence with Defendants in 2008, MJX Plus informed Defendants that MJX Plus did not want its interests in Falcon to be sold without its consent and approval, and did not want the Fund to be liquidated. Among other things, MJX Plus informed Defendants that it did not want to sell into a down market, and that MJX Plus wished to remain invested in Falcon and be afforded an opportunity to recoup its losses through any potential future gains in its Falcon investment.

188748.4

21.     However, Defendants ignored MJX Plus' specific instructions and sold MJX Plus' Falcon-related assets thus causing MJX Plus to realize massive losses. Upon information and belief, Defendants did so and began liquidating the Fund in an effort to protect Defendants from experiencing further losses in connection with the Fund, to raise funds to pay debts that Defendants had incurred in connection with Defendants' own investments in the Falcon Fund, and to enable the Fund to repay Citi for a loan that Citi had made to the Fund.

22.     As Defendants continued to sell off assets of the Fund, Defendants continued to engage in misleading and otherwise wrongful business practices in dealing with Plaintiffs and Plaintiff MJX Plus' Falcon Fund investment. In or about March 2008 through in or about April 2008, the parties engaged in negotiations in an effort to compensate MJX Plus for its Falcon Fund-related losses. Ultimately, Defendants made an offer to MJX Plus. Upon information and belief, Defendants made offers to other investors in the Fund that were on significantly more favorable terms than the offer made to MJX Plus. Additionally, Defendants, in a display of bad faith and otherwise wrongful behavior, prematurely withdrew their offer to Plaintiffs without notice or justification, ceased further negotiations, and advised Plaintiffs that Plaintiffs would have to sue to recover Plaintiffs' losses relating to their investments in Defendants' Falcon Fund. Upon further information and belief, Defendants thereafter continued to engage in negotiations and enter into agreements with other Falcon Fund investors who also suffered losses as a result of their investments in Falcon

23.     Throughout the course of Defendants' solicitation and management of Plaintiff MJX Plus' Falcon Fund investment, Defendants failed to honestly and fairly deal with Plaintiffs, and failed to prudently invest and manage Plaintiff MJX Plus' money in a manner consistent with Defendants' representations, as well as Defendants' fiduciary and contractual obligations.

188748.4

As a result of the foregoing, Plaintiffs suffered significant financial losses in connection with Plaintiff MJX Plus' investment in the Falcon Fund, including a capital loss of $29,000,000.00.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over the subject matter of this action under Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a) and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 240.10b-5.

25.     This Court has jurisdiction over the subject matter of this action and the federal questions presented herein pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337.

26.     This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a). The supplemental claims, including claims for negligent misrepresentation, breach of contract, fraud, and breach of fiduciary duty, are being asserted under New York common law. The allegations that support these claims arise out of the same transactions and operative facts, and are inherently connected with and related to the claims which arise under the aforementioned federal statutes and rules.

27.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. §§ 1391(b) and 1391(c). Many of the acts complained of herein, including, without limitation, Defendants' dissemination of false and misleading (a) oral and written communications directly to Plaintiff MJX Plus, (b) Offering Memorandum, (c) Offering Memorandum Supplement, (d) promotional materials, and Defendants' failure to follow

188748.4

Plaintiffs' explicit instructions as to the composition of Plaintiff MJX Plus' investment in Falcon occurred in this District.

## PARTIES

### Plaintiffs

28.     MJX Plus is a Delaware limited liability company.  From on or about August 11, 2005, through on or about January 25, 2008, Robert F.X. Sillerman ("Sillerman") served as MJX Plus' sole managing member and Citibank was, at all times relevant to this Amended Complaint, its administrative agent.  Since in or about early 1996, Sillerman was a client of Defendants Citi and Citibank.  In addition, Sillerman Commercial Holdings Partnership L.P. ("Sillerman Commercial"), one of Sillerman's business entities, and a Delaware partnership doing business in New York, had been a client of Citi and Citibank since in or about early 1999.  At all times relevant to this Amended Complaint, Sillerman and Sillerman Commercial held significant ownership interests in MJX Plus.

29.     MJX Special is a Delaware limited liability company with a similar business purpose as that of MJX Plus.   From on or about August 11, 2005 through on or about January 25, 2008, Sillerman served as MJX Special's sole managing member, and Citibank was, at all times relevant to this Amended Complaint, its administrative agent.  On or about January 25, 2008, MJX Plus Managing Member LLC replaced Sillerman as managing member of MJX Plus and MJX Special.

### Defendants

30.     Upon information and belief, Defendant Citi is a United States financial services institution, incorporated in Delaware, with its principal executive office located at 399 Park

188748.4

Avenue, New York, New York. Upon further information and belief, Citi purports to be America's pre-eminent financial services company with more than 200 million customer accounts, and, as of March 2009, total assets in excess of $1,823,000,000,000.00.

31.     Upon information and belief, Defendant Citibank is a bank organized and existing under the laws of the United States, is based in New York, New York, and is a wholly-owned subsidiary of Citi.

32.     Upon information and belief, Defendant Citigroup Alternative is a Delaware limited liability company, with its principal place of business at 731 Lexington Avenue, New York, New York, and an indirect wholly-owned subsidiary of Citi. Upon information and belief, at all times relevant to this Amended Complaint, Citigroup Alternative served as the alternative investment management arm of Citi.

33.     Upon information and belief, Citigroup Alternative, at all times relevant to this Amended Complaint, provided alternative investment products and portfolios to qualified clients of Citi, Citibank and Citigroup Alternative, and their institutional investors. Citigroup Alternative purports to be a leading innovator in developing and managing funds for U.S. and non-U.S. investors. More specifically, upon information and belief, Citigroup Alternative's staff is comprised of Citi's and Citigroup Alternative's select senior investment professionals who hold themselves out as sophisticated securities and investment professionals with extensive expertise in the securities and investment industry.

34.     Upon information and belief, Falcon is a Delaware limited liability company organized by and/or on behalf of Citi and/or Citigroup Alternative to issue shares of limited liability company interests in separate investment portfolios. Upon further information and belief, Falcon, at all relevant times herein, used certain portfolios as vehicles for investors to gain

188748.4

leveraged exposure to segments of fixed income markets that were created by, or targeted by

Falcon, and Citigroup Alternative, Falcon's Investment Manager. Citi, Citibank, Citigroup

Alternative and Falcon are sometimes collectively referred to herein as "Defendants."

## SPECIFIC FACTUAL ALLEGATIONS

**Plaintiff MJX Plus' Investment**
**In Defendants' Investment Vehicle**

35.    Upon information and belief, on or before October 31, 2004, Falcon and

Citigroup Alternative entered into an investment management agreement. Under the

management agreement, Citigroup Alternative agreed to serve as Falcon's investment manager,

and provide Falcon with investment management services for its funds and portfolios (the

"Falcon Funds"). Citigroup Alternative's investment management services included, among

other things, making all decisions concerning dispositions or other realizations of any Falcon-

related investments and portfolios, managing Falcon's day-to-day business and affairs, and

related investments and portfolios, and exercising discretionary authority over the management

of funds invested in the Falcon Fund by investors such as Plaintiff MJX Plus.

36.    In or before December 2004, Defendants' purportedly sophisticated, highly

trained representatives and financial advisers, including, but not limited to, Reaz Islam ("Reaz"),

Defendant Citigroup Alternative's Managing Director and Senior Investment Officer, and the

leader of Citi's fixed income alternatives team, presented Sillerman and Sillerman Commercial

with an opportunity of investing their ownership interest in MJX Plus into Falcon. Defendants

represented to Sillerman and Sillerman Commercial, via written communications and oral

statements more fully set forth below, that Falcon was, among other things, a safe, low-risk,

highly liquid, long-term investment vehicle that would be closely and expertly monitored by

188748.4

Defendants, and that offered low volatility and distributions. Unbeknownst to MJX Plus and its representatives at the time, these statements were false and, upon information and belief, were known by Defendants to be false when made.

37.    In reliance upon Defendants' aforementioned representations, and further false and misleading representations set forth more fully below, Sillerman and Sillerman Commercial elected to have MJX Plus invest $50,000,000.00 into Falcon. The investment was structured in a certain manner at the behest and direction of Defendants for which Plaintiff MJX Special was required to pay to Defendant Citibank a structuring fee of $500,000.00. Defendants informed MJX Plus that Plaintiffs were the only Falcon Fund investors required to pay the $500,000.00 structuring fee.

38.    In connection with such investment, prior to directing MJX Plus to invest in Falcon, and upon the advice and direction of Defendants Citi, Citibank and Citigroup Alternative, on or about August 11, 2005, Sillerman and Sillerman Commercial exchanged their combined 100% ownership interest in a portfolio of alternative investment funds, then valued at $54,000,108.00, for shares in MJX Special of equal value. Sillerman and Sillerman Commercial then exchanged their $54,000,108.00 worth of MJX Special shares, for shares of MJX Plus. MJX Plus then pledged the MJX Special shares that it received from Sillerman and Sillerman Commercial to Barclays Bank PLC ("Barclays"), a swap counterparty selected by Defendants for this transaction, as collateral under a swap between MJX Plus and Barclays. Pursuant to the swap agreement between MJX Plus and Barclays, Barclays, or its affiliate, HYMF, Inc., invested $50,000,000.00, the value of Plaintiff MJX Plus' shares of MJX Special on the date of the swap, into Falcon, and MJX Plus was entitled to receive the total return of the investment in Falcon. Effective February 1, 2008, Barclays' affiliate, HYMF, Inc., pursuant to a stock power transfer,

188748.4

transferred to US Bank NA, for the benefit of MJX Plus, its shares in the Falcon Fund, thereby

terminating the September 28, 2005 swap agreement between Barclays and MJX Plus.

39.    Based on Defendants' aforementioned representations, and further false and

misleading representations set forth more fully below, on or about September 21, 2005, Plaintiffs

entered into an Administrative Agency Agreement (the "Agency Agreement") with Citibank.

40.    Under the terms of the Agency Agreement, Plaintiffs, with respect to the

aforementioned transactions and subsequent investment, appointed Citibank as administrative

agent of the transactions and Plaintiff MJX Plus' related Falcon investment.  As Plaintiffs' agent,

Citibank, among other things, constructed the transaction, and invested MJX Plus' interest in the

Defendant-managed customized alternative portfolio - the Falcon Fund.  At the time of

Citibank's structured transaction, the value of MJX Plus' investment in the Falcon Fund was

approximately $50,000,000.00.  The Agency Agreement also provided that Citibank would

continue to administer MJX Plus' investment in the Falcon Fund.  The Agency Agreement

further provided that Citibank, with respect to the Falcon Fund, would strictly adhere to MJX

Plus' instructions concerning such matters as the composition of MJX Plus' portfolio in the

Falcon Fund.

41.    In consideration for Citibank's services and performance under the Agency

Agreement, MJX Special paid Citibank (a) a structuring fee of $500,000.00, and (b) quarterly

fees of .05% (.20% annually) of the then quarter-end market value of Plaintiff MJX Plus' entire

investment portfolio, including its share in the Falcon Fund.  In addition, MJX Plus, in

connection with its $50,000,000.00 investment in the Falcon Fund, paid Defendant Citigroup

Alternative monthly management fees of .25 % (3% annually) of the value of its Falcon Fund

investment.  In connection with the aforementioned fee payment structure, from in or about

September 2005 through in or about January 2008, MJX Special paid Citibank a total of

approximately $149,020.00 in quarterly fees in connection with the Plaintiffs' investment in the

Fund, and from in or about September 2005 through in or about January 2009, MJX Plus paid

Defendant Citigroup Alternative a total of approximately $3,515,396.00 in monthly management

fees.

**Defendants' False And Misleading**
**Statements Concerning the Falcon Fund**

42.     In addition to the false and misleading statements that were orally made to

Plaintiff MJX Plus as described in Paragraph 36 above, Defendants' Offering Documents

represented that the Falcon Fund was a low-risk, long-term investment with at least a five-year

investment horizon, that offered liquidity, and low volatility and would be closely and expertly

monitored to control risk.

43.     More specifically, Defendants' Offering Memorandum contained, among others,

the following statements:

a.     The first paragraph of the Offering Memorandum states, in part: "For each

Portfolio, the Investment Manager will select a limited number of specific segments of the fixed

income market and employ its assets in trading and investment strategies ("Strategies") within

those markets with the goal of achieving attractive risk-adjusted returns while providing liquidity

of cash flow. The Investment Manager believes the Portfolios will offer a viable investment

alternative for investors (i) by focusing on certain sectors of the fixed income markets that the

Investment Manger believes present profit opportunities, (ii) by employing appropriate

directional and non-directional Strategies designed to exploit such opportunities, (iii) by

engaging Advisors who are in a position to exploit investment opportunities using the selected

Strategies, (iv) by applying various risk management processes to control Strategy-specific risks

188748.4

as well as overall credit risks, funding/leverage risks, and interest rate risks." (Underscoring added.)

      b.  Under the sub-heading, "Multi-Strategy Investment Approach," the Offering Memorandum (p. 9) states, in part: "The Investment Manager will employ overall risk management and investment guidelines that are designed to control and/or reduce the Strategy-specific risks while increasing the probability of meeting the Portfolio's investment objective and reducing potential for style drift. . . . The Investment Manager believes that following those objectives and guidelines should provide investors with a favorable risk-adjusted return while providing attractive liquidity, diversification and cash flow over a five-year investment horizon." (Underscoring added.)

      c.  The Offering Memorandum (p. 10) begins its section headed, "Ongoing Portfolio Management," with the statement: "The Investment Manager will provide active ongoing portfolio management. It will generally conduct frequent reviews of profit and loss at the Advisor and Strategy levels, and monitors compliance with predetermined risk limits." (Underscoring added.)

      d.  "The Investment Manager will seek to mitigate [risk of loss] through investment restrictions and careful Advisor selection and oversight." (Underscoring added.)

      e.  "Investment Manager intends to initially allocate the Portfolios' assets among the Strategies described [in the Offering Memorandum]. The initial strategies have been selected because the Investment Manager believes they are capable of generating targeted returns with low correlation among them, resulting in reduced overall volatility." (Underscoring added.) (Offering Memorandum, p. 11.)

188748.4

     f.   The Fund had at least a "five-year investment horizon," "...long –term investment return advantages...", and "[a] recommended holding period of at least five years." (Underscoring added.) (Offering Memorandum, pp. 1, 2, 8 and 9.)

     44.    The statements made by Defendants in the Falcon Fund Brochure, include, *inter alia,* the following:

     a.   "Creating Structures – Create structures which we believe mitigate the risks inherent in an asset class, but that also capture and enhance its relative value, all in an attempt to meet the needs of investors.  Structural features could include the overlay of risk control (*i.e.,* credit quality, concentration limits, interest rate hedging) in an attempt to control risks, and the use of controlled leverage in an attempt to enhance returns." (Underscoring added.) (Falcon Fund Brochure, p. 7.)

     b.   "Active Management – SAI [Structured Alternative Investments] seeks to add value through active management of assets, liabilities, hedging and the selection of third party service providers." (Underscoring added.) (Falcon Fund Brochure, p. 7.)

     c.   "SAI designs fixed income alternatives based upon the philosophy that successful investment products should possess the following characteristics:

- Identifiable risk/return parameters
- Transparency
- Partial liquidity
- Diversification
- Ability to execute and manage disciplined strategies within set risk-investment guidelines
- Sustainable performance linked fee structure
- Cash flow is key driver of returns.  (Underscoring added).
  (Falcon Fund Brochure, p. 8.)

188748.4

   d.   The first statement under the subheading "What Is Unique About Falcon?", is: "Potential for attractive risk adjusted returns and discretionary semi-annual distributions of cash flows." (Underscoring added.) (Falcon Fund Brochure, p. 9.)

   e.   Under the subheading "Are Strategies Transparent?", the first sentence states: "Focus on strategies we believe offer acceptable levels of transparency, liquidity and low risk of style drift." (Underscoring added.) (Falcon Fund Brochure, p. 9.)

   f.   Under the heading "Falcon Investment Philosophy," the Falcon Fund Brochure states, in part: "Overlay various risk management guidelines that attempt to control strategy specific risks, interest rate risk, credit risk and use of leverage while maximizing the potential for absolute return." (Underscoring added.) (Falcon Fund Brochure, p. 10.)

   g.   Under the heading "Strategy Selection Process," the Falcon Fund Brochure (p. 11) states, in part: "Develop investment guidelines with the objective of trying to control risk and increasing the probability of delivering the desired results… Conduct qualitative and quantitative risk and return analysis in an attempt to assess potential return distributions and 'tail events.'" (Underscoring added.)

   h.   Under the heading "Characteristics Of Underlying Strategies," the Falcon Fund Brochure (p. 13) states, in part: "Falcon seeks to isolate and capture excess spreads (alpha), while attempting to manage strategy specific risks including credit, concentration, interest rate, prepayment and leverage over a recommended holding period of at least five years… Individual Strategies – each underlying will have strategy specific risk management guidelines." (Underscoring added.)

188748.4

i.   Under the heading "Active Management Process," the Falcon Fund Brochure (p. 18) states, in part: "<u>CAI [Citigroup Alternative Investments] employs a disciplined risk management, monitoring, investment and oversight process.</u>" (Underscoring added.)

j.   Under the heading "Technology And Systems," the Falcon Fund Brochure (p. 19) states, in part: "<u>Fully integrated investment, risk management system and client service platform.</u>" (Underscoring added.)

k.   Under the heading "Why Falcon?", the Falcon Fund Brochure (p. 20) states, in part: "Return and volatility – <u>potential for attractive risk adjusted returns over a suggested investment time horizon of at least 5 years.  The underlying strategies have demonstrated low correlation to each other and, what we believe are, attractive risk adjusted returns.</u> [Underscoring added.]...<u>Risk management – At least semi-annual rebalancing and on-going monitoring of credit risk, interest rate risk, prepayment risk and leverage across each of the underlying strategies...   Active Management – The assets and liabilities of the underlying strategies will be actively managed by the Investment Managers in an attempt to maximize risk adjusted returns.</u>" (Underscoring added.)

l.   The Fund "...<u>offer[ed] good long-term relative value,</u>" had a "<u>[r]ecommended holding period of at least 5 years,</u>" and could "...achieve absolute returns with low volatility <u>over the investment horizon of at least 5 years</u>..." (Underscoring added.) (Falcon Fund Brochure, pp. 7, 9, 13, 20, and 22.)

45.   MJX Plus accepted and relied on these statements as truthful expressions of how Defendants would cause the Falcon Fund to function, specifically, how, why and under what arrangements Defendants, through their management of the Falcon Fund, would invest MJX Plus' $50,000,000.00 in appropriate risk-adjusted, risk-reduced, risk-controlled, closely

188748.4

monitored investments and maintain liquidity and low volatility over at least a five-year investment horizon.

46.    MJX Plus, based on claims made by Defendants orally and in Defendants' Offering Documents, and due to Sillerman and Sillerman Commercial's long-standing relationship with Defendants Citi and Citibank, as well as the claimed investment expertise of Defendants' representatives, reasonably relied on Defendants' claims.

47.    Prior to MJX Plus investing in Defendants' Falcon Fund, Defendants promoted and advertised to Sillerman and Sillerman Commercial, and, thereby, to MJX Plus, the Falcon Fund's financial successes, outlook for positive, risk-adjusted growth, and the sophistication and expertise of Citigroup Alternative, the Falcon Fund investment manager.

48.    For example, Defendants' Offering Memorandum and Offering Memorandum Supplement stated that:

a.    "The CAI staff is comprised of a select group of senior investment professionals with extensive experience in the securities and investment industry. These individuals have been leading innovators in developing and managing funds for U.S. and non-U.S. investors." (Offering Memorandum, p. 14.)

b.    "The Investment Manager will manage the Portfolios." <u>No one, other than the Investment Manager</u>, "<u>will be entitled to make decisions with respect to the management, disposition or other realization of any investment made by a Portfolio, or regarding the Portfolio's business affairs.</u>" (Underscoring added.)

c.    "<u>The success of the Portfolios will depend, in large part, upon the skill and expertise of the Investment Manager, and the selected Advisors.</u>" (Underscoring added.) (Offering Memorandum, p. 19.)

188748.4

49.     The statements made by Defendants that an investment in the Falcon Fund would be a safe, low risk, long-term, liquid investment that would be closely and expertly monitored to control risk were false and misleading.  Specifically, the statements made by Defendants set forth in Paragraphs 36,  and 42 through 44 above were false and misleading in that, among other things:

a.     Defendants did not have a strategy for achieving "risk-adjusted returns while providing liquidity and cash flow."

b.     Defendants did not apply (nor did they intend to apply) " ... various risk management processes to control Strategy-specific risks as well as overall credit risks, funding/leverage risks, and interest rate risks."

c.     Defendants and, in particular, Citigroup Alternative, did not "...employ [or ever intend to employ] overall risk management and investment guidelines that are designed to control and/or reduce the Strategy-specific risks ..."; did not "... conduct [or ever intend to conduct] frequent reviews of profit and loss at the Advisor and Strategy levels..."; and did not "... monitor [or ever intend to monitor] compliance with predetermined risk limits," nor were there any predetermined risk limits.

d.     Defendants did not provide (nor did they intend to provide) "... attractive risk-adjusted returns."

e.     Defendants did not create (nor did they intend to create) structures to "... mitigate the risks inherent in an asset class, but also capture and enhance its relative value ... includ[ing] the overlay of risk control ... in an attempt to control risks ..."

f.     Defendants did not have (nor did they employ or intend to employ) "... the philosophy that successful investment products should possess the following characteristics:

23

188748.4

identifiable risk/return parameters ... ability to execute and manage disciplined strategies within set risk-investment guidelines."

       g.  Defendants did <u>not</u> focus on (nor did they intend to focus on) strategies designed to "... offer acceptable levels of transparency, liquidity and low risk of style drift."

       h.  Defendants did <u>not</u> have the investment philosophy of overlaying nor did they overlay or intend to overlay "... various risk management guidelines that attempt to control strategy specific risks, interest rate risk, credit risk ..."

       i.  Defendants did <u>not</u> develop (nor did they intend to develop) "... investment guidelines with the objective of trying to control risk and increasing the probability of delivering the desired results ... conduct qualitative and quantitative risk and return analysis in an attempt to assess potential return distributions and 'tail events.'"

       j.  Defendants, including, in particular, Citigroup Alternative, did <u>not</u> employ (nor did they intend to employ) " ... a disciplined risk management, monitoring, investment and oversight process."

       k.  Defendants did <u>not</u> have (nor did they intend to have) a "fully integrated investment, risk management system ..."

       l.  The Fund was not (nor did Defendants intend for the Fund to be) a "long-term investment," and the Fund did not have (nor did the Defendants intend for the Fund to have) at least a "five-year investment horizon," or a "recommended holding period of at least five years."

      50.    The statements by Defendants set forth above (Paragraphs 36, 42 through 44, 47, and 48) were false and misleading. Defendants knew that such statements were false and misleading (or had reckless disregard for their truth) when made, and such statements were

188748.4

intended by Defendants to be relied upon by MJX Plus and to induce MJX Plus to invest in the Falcon Fund, and to, thereafter, maintain its investment in the Falcon Fund.

51.     By contrast, MJX Plus, and its members, and representatives, including Sillerman and Sillerman Commercial, did not know (or have reason to know) that the statements by Defendants that are set forth above (Paragraphs 36, 42 through 44, 47 and 48) were false and, in fact, reasonably believed that they were true and relied on such statements in deciding to invest in the Falcon Fund and, thereafter, in deciding to maintain MJX Plus' investment in the Falcon Fund.

52.     Had MJX Plus known that Defendants' statements set forth above (Paragraphs 36, 42 through 44, 47 and 48) were false, MJX Plus would not have invested in the Falcon Fund.

53.     Due to Defendants' aforementioned false and misleading representations concerning the Falcon Fund, and Defendants' claimed investment expertise, billions of dollars were invested into the Falcon Fund, including Plaintiff MJX Plus' $50,000,000.00 investment in the Falcon Fund, causing great financial loss to MJX Plus.

**The Written Reports Provided By Defendants**
**After MJX Plus Invested In The Falcon Fund**
**Were Highly Misleading And Failed To Inform**
**MJX Plus Of The Specific Investments Made By The Fund**

54.     The Defendants post-investment disclosures (i.e., monthly Risk Reports, Quarterly Reports and yearly financial statements) were highly misleading and did not disclose the specific investments made by the Fund.  As a result, they aided Defendants in perpetrating and perpetuating the fraud against Plaintiffs.

55.     The monthly Risk Reports, Quarterly Reports and yearly financial statements that Plaintiffs actually received identified, and provided some information with respect to, the Fund's

188748.4

limited general investment strategies or portfolios (e.g., "F.I. Relative Value," "Preferred," "Opportunistic MBS," "Municipal Arbitrage," "MBS Long Short," and "Leveraged Loans"). However, none of those documents even identified (let alone discussed) the specific investments made by the Fund.

56.     For example, as illustrated by Exhibit 1 hereto, the monthly Risk Reports, which consisted of one page, showed the percentage allocations among the Fund's limited, general investment strategies or portfolios and provided other general information for each such portfolio or strategy regarding, for example, rating, leverage and/or duration.

57.     The Quarterly Reports, as illustrated by Exhibit 2 hereto, which consisted of two purportedly substantive pages, typically provided a relatively lengthy general "Market Commentary," a shorter "Strategy, Highlights & Commentary," charts showing allocations among the limited, general strategies or portfolios, and various investment return information. No information was provided regarding the specific investments made by the Fund

58.     Though much more lengthy, as illustrated by Exhibit 3, hereto, the yearly financial statements also did not provide information regarding the specific investments made and/or held by the Fund.  In addition to providing various general financial information concerning the Fund, accounting policies, etc., the yearly financial statements addressed, in a general manner, the Fund's investments in other funds, not specific investments.

59.     Thus, Plaintiffs did not know whether, and until the period specified in Paragraph 77  below, did not have reason to suspect that, the Falcon Fund had made investments that were contrary to the representations and disclosures provided in Defendants' Offering Documents.

60.     Defendants' post-investment disclosures during the period from September 2005 through May 2007 painted a picture of the Falcon Fund as a well-managed fund whose

188748.4

performance and risk factors were seemingly in-line with that set forth in Defendants' Offering Documents.

61.    However, such post-investment disclosures failed to inform MJX Plus of the specific investments made by the Falcon Fund. MJX Plus, through its review of Defendants' post investment disclosures during the period from September 2005 through May 2007, had no way of knowing if, or to what extent, for example, the Fund held securities in risky and highly volatile hybrid adjustable rate mortgages, and non-agency loans which included private, high risk subprime mortgages. Detailed information concerning the Fund's actual investment philosophy, investment and management practices, and its investments and holdings was solely in Defendants' possession.

62.    At all times during the period of MJX Plus' investment in Falcon, it was Defendants' responsibility to expertly monitor and manage MJX Plus' Falcon Fund investment. MJX Plus paid significant management fees to Defendants Citibank and Citigroup Alternative for the benefit of having MJX Plus' Falcon Fund investment managed and controlled by the same purportedly industry-leading investment experts that had created the Fund. After investing in the Fund, it was reasonable for MJX Plus to rely upon Defendants' representations regarding the Fund's investment portfolios or strategies and, in point of fact, MJX Plus had no choice but to do so. Furthermore, if Plaintiffs had wanted to take their $50,000,000.00 and invest it in individual investments that they themselves managed on a day-to-day basis rather than investing in a purportedly expertly managed fund, they could have done so. But, instead, Plaintiffs, based upon the representations made by Defendants concerning, for example, the nature of the Fund (e.g., low-risk, liquid, long-term, etc.) and that it would be closely managed and monitored by expert investment managers (for which Plaintiffs paid considerable fees), chose to invest in the

188748.4

Falcon Fund and thus place on Defendants the obligation to determine, make, monitor and

manage on a day-to-day basis the specific investments made with Plaintiffs' capital. It was not

until the period described below (Paragraphs 64 through 76) that Plaintiffs' had reason to

question whether Defendants were meeting their obligations and acting in a manner that was

consistent with their representations. And, as alleged below, when Plaintiffs did raise questions,

Defendants provided false responses.

**False And Misleading Oral And Written Statements
Made By Defendants' Investment Advisors To Plaintiff
MJX Plus, And Its Representatives Regarding The Status
And Composition Of MJX Plus' Investment In The Falcon Fund**

63.     Throughout the period from in or about January 2007 through in or about June

2007, Plaintiffs were aware of the general downturn in the securities markets and the U.S. and

global economies. However, due to the representations made by Defendants in Defendants'

Offering Documents, monthly Risks Reports, Quarterly Reports and yearly financial statements,

the purported expertise of Defendants' representatives who were managing the Fund and the

purportedly low-risk nature of the Fund, MJX Plus believed that its investment in Falcon would

not suffer significant losses during this turbulent period.

64.     Nonetheless, in or about June 2007, Plaintiff MJX Plus' representatives, in

response to the highly-publicized slowdown and general negative performance of various

investment vehicles in U.S. financial markets, specifically fixed income relative value

investments that included certain highly volatile, high-risk investments such as hybrid adjustable

rate mortgages, subprime mortgage backed securities, and diversified asset backed securities that

included collateralized debt obligations which also held investments in the aforementioned

highly volatile, high-risk investments, were concerned about MJX Plus' investment in the Falcon

Fund. As set forth in greater detail above (Paragraphs 54 through 62), although MJX Plus was

188748.4

provided with Falcon Fund monthly Risk Reports that documented the percentage of the Falcon

Fund's composition allocated to various general investment portfolios, including, for example,

"F.I. relative value," "diversified ABS," "opportunistic mortgage backed securities," and

"mortgage backed securities long/short," such reports did not inform MJX Plus of the Falcon

Fund's specific investments, or of the specific composition of MJX Plus' investment portfolio in

the Falcon Fund, including, for example, whether and to what extent Falcon and/or MJX Plus'

Falcon Fund portfolio was invested in risky and highly volatile hybrid adjustable rate mortgages

and subprime mortgage backed securities. Additionally, also as alleged above (Paragraphs 54

through 62) MJX Plus was unable to determine if Falcon's investment portfolios included risky

and highly volatile hybrid adjustable rate mortgages and subprime mortgage backed securities

that were contrary to Falcon's represented investment objectives and philosophy.

65.    On or about June 27, 2007, Gary McDaniel ("McDaniel"), one of Plaintiffs'

representatives, contacted Reaz to inquire about the extent of Plaintiff MJX Plus' exposure, with

respect to the Falcon Fund, to potential problems in the aforementioned highly volatile, high-risk

investments, including, in particular, the degree to which the Falcon Fund was invested in sub-

prime mortgages.

66.    Reaz alleviated Plaintiff MJX Plus' concerns. Specifically, Reaz stated, in

substance, to McDaniel that:

      a.    Although the Falcon Fund had lost approximately 1% in value since June

          2007, the loss was primarily due to a 2% loss in Falcon's underperforming

          municipal arbitrage book;

      b.    Due to the decline of Bear Stearns, spreads have widened a bit, but there

          was only about a 25-30 bps (basis points) decline;

c.    The average credit rating of the Falcon Fund book is AA; the Fund's

exposure to the negative performance of highly volatile, high risk

mortgage backed securities investments was minimal;

d.    The Fund's mortgage backed securities investments were primarily agency

loans (mortgages guaranteed by the Government Sponsored Enterprises,

Freddie Mac and Fannie Mae, that the investment community viewed as

more secure than non-agency loans which included private, high risk

subprime mortgages and adjustable rate mortgages); and

e.    **Only $200 million of the Falcon Fund's $16 billion total value was**

**invested in subprime mortgage backed securities, 95% of which were**

**rated AAA with one rated AA, and one A.**

67.    During this same conversation, on or about June 27, 2007, Reaz further assured

MJX Plus that, as for the Falcon Fund's exposure to CLOs (collateralized loan obligations

which, according to Defendants' oral and written disclosures, included loans to corporations) that

made up parts of Falcon's fixed income relative value and diversified asset-backed securities

investment portfolios, Falcon had about $200M exposure here as well, mostly '05 and some '06

vintages in the AA and A tranches, and that these deals were done before covenant lite deals

became dominant and had good covenants in place.

68.    Plaintiff MJX Plus reasonably relied upon Defendants' statements and elected to

maintain (and thus not redeem, withdraw or alter) its investment in the Falcon Fund.

69.    From on or about August 1, 2007, to on or about September 13, 2007, MJX Plus

became increasingly alarmed with well-publicized news reports concerning the continued

market-wide negative performance of the highly volatile, high-risk hybrid adjustable rate

188748.4

mortgage investments and investments in subprime mortgage backed securities, and specifically, the Falcon Fund's exposure to such high-risk investments.

70.    On or about September 13, 2007, Defendants, in a telephone conversation between Reaz and McDaniel, assured Plaintiff MJX Plus that its investment in the Falcon Fund was safe and would not suffer due to the downturn in the subprime mortgage backed securities market. Specifically, Reaz stated, in substance, to McDaniel that, there was no significant risk to the Falcon Fund's investment portfolio from the ongoing subprime mortgage market collapse.

71.    In addition, on or about September 21, 2007, Defendants, in a meeting with Plaintiff MJX Plus and its representatives, which several of Defendants' investment professionals, including Reaz, attended, urged Sillerman and Sillerman Commercial to continue MJX Plus' investment in the Falcon Fund. Defendants assured MJX Plus that in three to six-months time, 90% of the Falcon Fund's portfolio would return to fair value. Following the 10% drawdown from June-August, Reaz broke down the losses and near term outlook as follows: munis lost 4 - 5% of NAV (Net Asset Value) and recovery would be year-end, with two-thirds of the recovery having already occurred; preferreds lost 2 - 3% with recovery starting once banks reported third-quarter earnings and would finish by year-end; and the rest of the loss was from the mortgages, which were "already back" to fair value. Reaz further assured MJX Plus during this meeting that the Falcon Fund's future income distributions would be 50 -100 bps higher starting in April 2008 and that, therefore, it would be unwise for Sillerman and Sillerman Commercial to direct MJX Plus to redeem or withdraw MJX Plus' investment in the Falcon Fund.

72.    Plaintiff MJX Plus reasonably relied upon Defendants' statements, and elected to maintain (and thus not withdraw, redeem or alter) MJX Plus' investment in the Falcon Fund.

188748.4

73.    After the September 21, 2007 meeting, Plaintiff MJX Plus' investment in the Falcon Fund continued to experience significant loss in value.

74.    Defendants' post-investment disclosures or reports during the period from June 2007 through September 2007 failed to provide MJX Plus with any more detailed information than that which was orally conveyed to MJX Plus by Defendants' representatives.  As set forth above (Paragraphs 54 through 62), Defendants' Risk Reports, Quarterly Reports and yearly financial statements generally advised MJX Plus on the Falcon Fund's portfolios and strategies, objectives, performance and outlook.

75.    Defendants' Risk Reports during the aforementioned period, and throughout the period of MJX Plus' investment in Falcon, failed to detail the extent to which the Falcon Fund was exposed to highly volatile, high-risk hybrid adjustable rate mortgage investments and investments in subprime mortgage backed securities, or which portfolios or strategies held the majority of the Fund's investments is such risky securities.

76.    In addition, MJX Plus did not even receive Quarterly Reports from Defendants for the 2nd and 3rd Quarters of 2007 (as well as other periods).  (Nor does MJX Plus believe that it ever received monthly Risk Reports for the period from October 2005 through December 2005 (as well as other months).)  Upon information and belief, such reports also would have failed to give MJX Plus any detailed information concerning the extent to which the Falcon Fund was exposed to highly volatile, high-risk hybrid adjustable rate mortgage investments and investments in subprime mortgage backed securities.

77.    On or about  December 6, 2007, in a meeting with Reaz, Defendants advised MJX Plus that, contrary to Defendants' prior representations concerning the strength and composition of the Falcon Fund's investment portfolio, the Falcon Fund held approximately $500 million

188748.4

worth of assets in highly volatile, high-risk mortgage backed securities (2½ times the $200 million that Defendants had represented just six (6) months before), and in addition to this high-risk exposure, the Falcon Fund had a large block of its assets in its various investment portfolios, including the fixed income relative value and diversified asset-backed securities portfolios, invested in hybrid adjustable rate mortgage securities, and subprime mortgage backed securities. More specifically, contrary to the representations made by Defendants in their disclosure materials, and in meetings, and telephone conversations with MJX Plus in or about June 2007 through in or about November 2007, Reaz informed MJX Plus that approximately 50% of the assets in the Falcon Fund's diversified asset-backed securities portfolio were comprised of collateralized debt obligations backed by non-agency, risky adjustable rate mortgages and subprime mortgages, and Falcon's fixed income relative value portfolio contained a significant block of assets invested in hybrid adjustable rate mortgage backed securities, and subprime mortgage backed securities.

78.    Defendants' December 6, 2007 revelations were drastically different from the false and misleading misrepresentations made to Plaintiff MJX Plus on or about June 27, 2007, and were a continuation of Defendants' pattern of fraudulently misrepresenting, in their Offering Documents, the Falcon Fund's objectives, risks, philosophy and practices. The value of MJX Plus' investment in the Fund declined approximately $13,300,000.00 during just the aforementioned period of June – December 2007. To this day, MJX Plus still does not know of the specific investments made by the Fund, and which of the Falcon Funds' portfolios and strategies contained the majority of the Fund's investments in risky and highly volatile hybrid adjustable rate mortgages and subprime mortgage backed securities. Therefore, MJX Plus is

unable at this time to attribute the loss in value in its Falcon Fund investment to specific investments made by Defendants.

79.    Had MJX Plus known, at the time of the conversation on or about June 27, 2007, of the true extent of its exposure to the Falcon Fund's high-risk, and highly volatile investments in, among other things, subprime and hybrid adjustable rate mortgage securities, and not relied on the ongoing, and continued pattern of false and misleading statements made by Defendants' purportedly highly trained, sophisticated, and successful investment professionals, MJX Plus would have elected to withdraw or redeem its investment, or, at least, alter its investment in Falcon to reduce its exposure to these negatively performing, highly volatile, high-risk investments.

80.    Defendants, at all times relevant to this Amended Complaint, knew of (a) the false and misleading nature of the representations made in their pre-investment and post-investment disclosures and other statements, (b) the high-risk investment philosophy, strategy, practices and exposure of the Falcon Fund investments, and (c) Defendants' failure to disclose such high-risk investment strategy, practices and exposure to Plaintiff MJX Plus or its members, representatives and employees, including Sillerman and Sillerman Commercial who were long-time clients of Defendants Citi and Citibank, all while continuing to market and assure MJX Plus that Defendants' Falcon Fund investment portfolio was a low-risk investment vehicle.

188748.4

**Defendants' Failure to Follow Plaintiff MJX Plus'**
**Instructions Concerning MJX Plus' Falcon Fund Investment**

81.     The Agency Agreement (p. 1) provided, in pertinent part, that Defendant Citibank would, "Pursuant to the instructions of MJX Plus take action to effect changes in composition of the Enhanced Portfolio."

82.     Following the December 6, 2007 meeting in which Defendants informed MJX Plus of Defendants' prior misrepresentations, MJX Plus, in an effort to recoup the losses in MJX Plus' Falcon Fund investment caused by Defendants' numerous misrepresentations and otherwise wrongful conduct, sought to reallocate its Falcon investments.

83.     On December 31, 2007, in an email from Farhan Sharaff, a then representative and member of Plaintiff MJX Plus, to Defendants, MJX Plus instructed Defendants to restructure its Falcon Fund investment allocation to reflect the following distribution: 30% in municipal arbitrage; 15% in preferred securities; 25% in opportunistic mortgage backed securities hedged; 2% in fixed income relative value; 2% in diversified asset-backed securities; and 26% in cash and equivalent.  Pursuant to and consistent with, among other things, the representation in Defendants' Falcon Fund Brochure that Defendants would rebalance the Fund within investment guidelines (p. 18), and standard investment industry practice, implicit in MJX Plus' December 31, 2007 share allocation instructions Defendants were also charged with the responsibility of periodically rebalancing MJX Plus' Falcon investments in order to maintain the percentage allocations set forth in MJX Plus' December 31, 2007 instructions.

84.     Defendants, in a December 31, 2007 email from Spyro Stathonikos, one of Defendants' investment professionals, acknowledged receipt of Plaintiff MJX Plus' request, and informed MJX Plus that Defendants would make the requested changes effective January 2, 2008.

188748.4

85.    While Defendants made some changes in the composition of MJX Plus' Falcon Fund investment, Defendants failed to follow MJX Plus' detailed instructions and failed to make the specified changes in the composition of MJX Plus' investment in the Falcon Fund. In addition, at no time after Defendants' receipt of MJX Plus' allocation instructions did Defendants rebalance MJX Plus' Falcon investment to reflect MJX Plus' December 31, 2007 allocation instructions.

86.    As a result of Defendants' failure to adhere to MJX Plus' specific instructions regarding changes in the composition of MJX Plus' investment in the Fund, MJX Plus suffered further financial harm. In fact, MJX Plus' investment declined another approximately $9,000,000.00 in value during the period in which Defendants failed to strictly adhere to MJX Plus' share allocation instructions (January – February 2008). Therefore, on February 21, 2008, Plaintiffs terminated the Administrative Agency Agreement and removed Citibank as administrative agent of MJX Plus' Falcon Fund investment.

87.    In meetings, telephone conversations and email correspondence with Defendants in 2008, MJX Plus informed Defendants, including, without limitation, Reaz, that MJX Plus did not want its interests in Falcon to be sold without its consent and approval, and did not want the Fund to be liquidated. Prior to MJX Plus' investment in Falcon, Defendants, in their Offering Documents, marketed the Fund as a long-term investment with at least a five-year investment horizon. The purpose of this would have been to allow investors in the Fund to make it through the highs and lows of investment cycles. In addition, during the period of Plaintiff MJX Plus' investment in Falcon, Defendants repeatedly advised MJX Plus that MJX Plus should not sell its investments in the Fund in response to negative swings in the market as the Fund, with its investment horizon of at least five-years, was designed to give investors the opportunity to

188748.4

recover losses and benefit from upswings in the securities in which the Fund was invested.

Therefore, consistent with Defendants' numerous representations and advice, MJX Plus, among

other things, informed Defendants that it did not want to sell into a down market, and that MJX

Plus wished to remain invested in Falcon and be afforded an opportunity to recoup its losses

through any potential future gains in its Falcon investment.

88.     However, Defendants ignored MJX Plus' specific instructions and Defendants'

own advice to MJX Plus not to sell investments in the Fund, and acted in a manner directly

contrary to their representations that the Fund had an investment horizon of at least five (5) years

by selling MJX Plus' Falcon-related assets thus causing MJX Plus to realize massive losses.

Upon information and belief, Defendants did so and began liquidating the Fund in an effort to

protect Defendants from experiencing further losses in connection with the Fund, and to raise

funds to pay debts that Defendants had incurred in connection with Defendants' own investments

in the Falcon Fund, and to enable the Fund to repay a loan that Citi had made to the Fund.

## FIRST CLAIM

(By MJX Plus against all Defendants for Violations of
Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder)

89.     Plaintiff MJX Plus repeats and realleges each of the allegations contained in

Paragraphs 1 through 88 above as if fully set forth herein.

90.     At all times relevant to this Amended Complaint, Defendants, individually and in

concert with each other, directly and indirectly, by the use and means of instrumentalities of

interstate commerce and of the mails, engaged and participated in a continuous course of conduct

to conceal adverse material information about the Falcon Fund, including its true investment

objectives and approach, management principles, philosophies and practices and risk exposure as

set forth herein.  Defendants employed devices, schemes, and artifices to defraud while in

188748.4

possession of material, adverse non-public information that was within Defendants' peculiar knowledge, and engaged in acts, practices, and a course of conduct that included the making of, or participating in the making of, untrue and misleading statements of material facts and omitting to state material facts necessary in order to make the statements made about the Falcon Fund not misleading.

91.     Specifically, Defendants knew or should have known that Defendants' investment philosophy, management decisions and practices created a high degree of volatility and risk within the Falcon Fund investment portfolio, thereby creating a significantly higher than represented risk to Plaintiff MJX Plus' investment in the Falcon Fund.  Defendants knew or should have known that, contrary to representations Defendants made in their Offering Documents, Risk Reports, Quarterly Reports, and yearly financial statements, Defendants' true investment strategy and practices exposed MJX Plus' investment in the Falcon Fund to a high-risk concentration, and high leverage in investments in volatile, high-risk mortgage backed securities, hybrid adjustable rate mortgage securities and subprime mortgage backed securities, and that the Fund was not a long-term investment with a at least a five-year investment horizon, but, instead, a relatively short-term investment in which Defendants, contrary to Plaintiffs' specific instructions, sold MJX Plus' interests in the Fund (and began liquidating the Fund) after approximately just two and a half years, causing MJX Plus to realize massive losses.

92.     As detailed in Paragraphs 42 through 44, 47 through 49, and 54 through 62 above, Defendants' Offering Documents, Risk Reports, Quarterly Reports, yearly financial statements, and other periodic disclosures were materially false and misleading, contained untrue statements of material facts, omitted to state material facts necessary to make the statements made in those documents not misleading under the circumstances in which they were made, and failed to

188748.4

disclose material facts.  In addition, Defendants' oral misrepresentations during the period from

in or about June 2007 through in or about November 2007, as described in Paragraphs 64

through 80 above, concerning, among other things, the Falcon Fund's exposure to investments in

high-risk adjustable rate mortgage securities and subprime mortgage backed securities, were a

continuation of Defendants' pattern of fraudulently misrepresenting Falcon's investment

objectives, risks, practices and philosophy.  The misrepresentations contained in, or material

facts omitted from, Defendants' financial disclosures are described in Paragraphs 42 through 44,

47 through 49, and 54 through 62 above, include, among other things, statements by Defendants

that the Falcon Fund possessed or would implement identifiable risk/return parameters,

transparency, partial liquidity, diversification of assets to mitigate risk, that Defendants would

employ a comprehensive risk management process, and that Defendants would be able to

execute and manage disciplined strategies within set risk/investment guidelines, and that the

Fund was a long-term investment with at least a five-year investment horizon.  As detailed

herein, these statements in Defendants' Offering Documents, Risk Reports, Quarterly Reports,

yearly financial statements, and other disclosures were materially false and misleading.

Defendants did not make a reasonable investigation or possess reasonable grounds for the belief

that the statements including, but not limited to, those described above were true, were without

omissions of any material facts, and were not misleading.

        93.     Defendants, with knowledge of the false and misleading nature of the statements

contained in their financial disclosures, and in reckless disregard of their obligation to properly

disclose their financial objectives and investment strategies, caused the heretofore complained of

public statements to contain misstatements and omissions of material facts as alleged herein.

The misrepresentations contained in, or material facts omitted from, Defendants' financial

188748.4

disclosures were the collective work of Citi, Citibank, Citigroup Alternative, and Falcon as each

Defendant had direct knowledge of, and/or participated in: (a) the creation of the Falcon Fund;

(b) the drafting or distribution of the Offering Documents, Risk Reports, Quarterly Reports,

yearly financial statements, and other disclosures; and (c) investments being directed to the

Falcon Fund. Defendants' oral misrepresentations during the period from in or about June 2007,

through in or about November 2007 were the collective work of Citi, Citibank, Citigroup

Alternative, and Falcon as each Defendant had direct knowledge of, and/or participated in such

oral communications made by Defendants to MJX Plus.

94.    Defendants acted with scienter throughout all times relevant to this Amended

Complaint, in that they either had knowledge of the misrepresentations and omissions of material

facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain

and to disclose the true facts, even though such facts were available to them. Defendant

Citigroup Alternative was Falcon's investment manager, and was Citi's wholly owned subsidiary

and served as Citi's alternative investment management arm. Therefore, Defendant Citi was

directly responsible for Citigroup Alternative's and Falcon's false and misleading statements and

omissions disseminated to the public through, among other things, the Offering Documents, Risk

Reports, Quarterly Reports, yearly financial statements, and other disclosures, and the

aforementioned oral statements made by Defendants directly to MJX Plus during the period from

in or about June 2007, through in or about November 2007

95.    Citi, through its position of control and authority as owner, controller and

manager of the activities of Citigroup Alternative, Falcon's investment manager, was able to and

did control the content of the public statements disseminated by Citigroup Alternative and/or

Falcon. Citibank, by virtue of its position as a bank that directed investments from its clients,

188748.4

including Plaintiff MJX Plus, into Citigroup Alternative investment vehicles, including the

Falcon Fund, was able to control the dissemination of the public statements made by Citigroup

Alternative and/or Falcon. With knowledge of the false and misleading nature of the statements

contained therein, and in reckless disregard of the true financial condition, and investment

strategy and practices of the Falcon Fund, Citi and Citibank caused the heretofore complained of

public statements to contain misstatements and omissions of material facts as alleged herein, and

for such misstatements and omissions of material fact to be made to MJX Plus.

96.    Defendants' misrepresentations and omissions were intentional or reckless. Citi,

due to its control of Citigroup Alternative (and Falcon), had unfettered access to Citigroup

Alternative's and Falcon's books and records. Citi, as a world renowned, pre-eminent financial

institution with highly trained and sophisticated investment professionals, certainly had

knowledge of the standards that are required for such financial disclosures. Defendants, by

inducing Plaintiff MJX Plus, through the use of numerous misrepresentations made by

Defendants in their disclosure materials, to invest in the Falcon Fund, acted in a manner that was

highly unreasonable and an extreme departure from the standards of ordinary care under the

circumstances. The following facts indicate a strong inference that Defendants acted with

scienter:

a.    As set forth in Paragraphs 42 through 44, 47 through 49, and 54 through

62, Defendants' Offering Documents, Risk Reports, Quarterly Reports, yearly financial

statements, and oral statements made by Defendants directly to MJX Plus during the period from

in or about June 2007, through in or about November 2007 contained numerous

misrepresentations. Defendants knew that such statements and representations were false when

made or acted in reckless disregard for their truth.

41

188748.4

b.      Citibank, as part of the structuring of a series of transactions (Paragraphs 37 through 41 above) through which Plaintiff MJX Plus invested in Falcon, received a structuring fee of $500,000.00. Citibank directed MJX Plus' $50,000,000.00 investment in Falcon, and knew that MJX Plus was entitled to receive the value of its investment, less Citibank's annual fee of .20% of the value of MJX Plus' Falcon Fund investment, and less Citigroup Alternative's monthly management fee of .25 % (3% annually) of the value of the MJX Plus Falcon Fund investment. In connection with the fee payment structure, from in or about September 2005 through in or about January 2008, MJX Special paid Citibank approximately $149,020.00 in quarterly fees, and from in or about September 2005 through in or about January 2009, MJX Plus paid Defendant Citigroup Alternative approximately $3,515,396.00 in monthly management fees.

c.      Citibank knew that MJX Plus would not have invested in Falcon, and, as a result, Citibank would not have received its structuring fee, or its share in the value of MJX Plus' investment in Falcon, if it were not for the misrepresentations made in Defendants' disclosure materials.

d.      Citigroup Alternative, as Falcon's investment manager, was responsible for investing Falcon's portfolio of investments, including MJX Plus' $50,000,000.00, and managing Falcon's day-to-day business affairs, and Citigroup Alternative received monthly management fees of .25% (3% annually) of the value of MJX Plus' investment in the Fund. In connection with the fee payment structure, from in or about September 2005 through in or about January 2009, MJX Plus paid Defendant Citigroup Alternative approximately $3,515,396.00 in monthly management fees.

188748.4

e.      Falcon was the holder of the investment portfolio into which MJX Plus' $50,000,000.00 investment was directed, and, upon information and belief, Falcon reported directly to Citigroup Alternative.

f.      Citi, as the owner/parent company of Citigroup Alternative, had the power and authority to cause Citibank, Citigroup Alternative and Falcon to engage in the wrongful conduct complained of herein, and, upon information and belief, Citigroup Alternative reported directly to Citi.

g.      Citibank negotiated the Agency Agreement with Plaintiffs, and Defendants Citi, Citibank, Citigroup Alternative, and Falcon knew that Plaintiff MJX Special's quarterly fee to Citibank as Plaintiffs' Administrative Agent, and Plaintiff MJX Plus' monthly fee to Citigroup Alternative as Investment Manger of the Falcon Fund (specified in Paragraph 41 above), were contingent upon Plaintiff MJX Plus' investment remaining with Falcon.

h.      Defendants wanted Plaintiff MJX Plus to invest in Falcon and to remain invested in Falcon so that, among other things, Defendants could continue to share in the fees, and other revenue or income and benefits resulting from MJX Plus' investment in Falcon.

97.    As a result of Defendants' deceptive practices and false and misleading statements and omissions, billions of dollars were invested into the Defendants' Falcon Fund. Without knowledge of the false and misleading nature of the representations and omissions described above, and the deceptive and manipulative nature of the disclosure devices employed by Defendants, Plaintiff MJX Plus, in reliance on the false and misleading material statements and material omissions by Defendants and the long standing financial relationship of Plaintiff MJX Plus' managing member, members, representatives and employees, including Sillerman

188748.4

and Sillerman Commercial, with Citibank and Citi, invested in and maintained their investment in Defendants' Falcon Fund and were damaged thereby.

98.    Had Plaintiff MJX Plus known of the materially adverse information not disclosed by Defendants, or been aware of the falsity of Defendants' financial disclosures, it would not have invested in Defendants' Falcon Fund.

99.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and Plaintiff MJX Plus has suffered, among other things, a capital loss of approximately $29,000,000.00.

## SECOND CLAIM

(By MJX Plus against all Defendants for Violations of Section 20(a) of the Exchange Act)

100.    Plaintiff MJX Plus repeats and realleges each of the allegations contained in Paragraphs 1 through 99 above as if fully set forth herein.

101.    Each of the individual Defendants was a controlling person of Falcon within the meaning of Section 20 of the Exchange Act. At the time of the creation and distribution of the Offering Documents, Risk Reports, Quarterly Reports, yearly financial statements, and periodic disclosures, and Defendants' oral statements made to MJX Plus during the period from in or about June 2007, through in or about November 2007, each of the individual Defendants had the power and authority to cause Citi, Citibank, Citigroup Alternative, and Falcon to engage in the wrongful conduct complained of herein by reason of the following:

a.    Citi had the power and authority to cause Citibank, Citigroup Alternative and Falcon to engage in the wrongful conduct complained of herein by virtue of its position as the parent-company/owner of Citibank and Citigroup Alternative, which, in turn, controlled Falcon and the Falcon Fund.

188748.4

      b.     Citibank had the power and authority to cause Citi, Citigroup Alternative and Falcon to engage in the wrongful conduct complained of herein by virtue of its position as a bank that directed investments from its clients, including Plaintiff MJX Plus, into Citigroup Alternative investment vehicles, including the Falcon Fund.

      c.     Citigroup Alternative had the power and authority to cause Citi, Citibank and Falcon to engage in the wrongful conduct complained of herein by virtue of its position as Citi's alternative investment management arm, and wholly owned subsidiary, and its position as Falcon's investment manager.

      d.     Falcon had the power and authority to cause Citi, Citibank and Citigroup Alternative to engage in the wrongful conduct complained of herein by virtue of its position as the company that held the Falcon Fund's investment portfolio.

102.    The individual Defendants were each in a position to control or influence the contents of, or otherwise cause corrective disclosures to have been made in (a) the Offering Documents, along with Citi's, Citigroup Alternative's and Falcon's other public statements that contained materially false and misleading statements that were disseminated, and (b) Defendants' written and oral statements made directly to MJX Plus during the period from in or about June 2007, through in or about November 2007, and each of the Defendants in this Amended Complaint was a culpable participant in the fraud alleged herein.

103.    None of the individual Defendants named in this Amended Complaint made a reasonable investigation or possessed the grounds for the belief that statements contained in the Offering Documents were true and devoid of any omissions of material fact. In addition, none of the individual Defendants named in this Amended Complaint made a reasonable investigation or possessed the grounds for belief that Defendants' written and oral statements made to MJX Plus

188748.4

during the period from in or about June 2007, through in or about November 2007, were true and devoid of any omissions of material fact.

104.    Therefore, by reason of their positions of control over the Falcon Fund, and the wrongful conduct alleged herein, which constituted violations of Section 10(b) of the Exchange Act and Rule 10b-5, each of the individual Defendants is jointly and severally, with and to the same extent as the other, liable to Plaintiff MJX Plus as a result of the wrongful conduct alleged herein pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, MJX Plus suffered damages in connection with its investment in the Falcon Fund, including a capital loss of approximately $29,000,000.00.

## THIRD CLAIM

(By MJX Plus against all Defendants for Fraud)

105.    Plaintiff MJX Plus repeats and realleges each of the allegations contained in Paragraphs 1 through 104 above as if fully set forth herein.

106.    As specified above (Paragraphs 36, 42 through 44, 47 through 49, and 54 through 62), in the Offering Documents, Risk Reports, Quarterly Reports, yearly financial statements, and other periodic disclosures, and in other communications, including telephone conversations and meetings, and documents, Defendants, individually and in concert with each other, intentionally made false statements regarding the Falcon Fund's investment approach, strategy and philosophy, management principles, practices, risk exposure, and duration or investment horizon, in order to induce Plaintiff MJX Plus to invest in the Falcon Fund.  Defendants knew that such statements and misrepresentations were false when made, or acted in reckless disregard for their truth.

188748.4

107.    Plaintiff MJX Plus reasonably relied upon the Defendants' materially false statements and misrepresentations in deciding to invest in Defendants' Falcon Fund.  MJX Plus would not have invested in the Falcon Fund if it had known the truth.

108.    In addition, as specified above (Paragraphs 64 through 80) in telephone conversations, meetings and other communications during the period from in or about June 2007, through in or about November 2007, Defendants, individually and in concert with each other, intentionally made false statements to Plaintiff MJX Plus regarding the financial condition of the Falcon Fund, and the risk exposure and composition of the Falcon Fund's portfolio of investments, including, for example, the extent to which the Falcon Fund was invested in subprime mortgage backed securities, in order to induce MJX Plus to maintain (and thus not redeem or withdraw) its investment in the Falcon Fund.  Defendants knew that such statements and misrepresentations were false when made or acted in reckless disregard for their truth.

109.    MJX Plus reasonably relied upon Defendants' materially false statements in deciding to maintain (and thus not redeem, withdraw or alter) its investment in the Falcon Fund. MJX Plus would not have maintained its investment in the Falcon Fund (or, at the very least, would have altered its investment to reduce the losses and enormous degree of risk created by Defendants) if it had known the truth.

110.    As a result of the intentionally false, misleading and fraudulent misrepresentations made by Defendants, Plaintiff MJX Plus has suffered damages including, but not limited to, a decrease in value of its Falcon Fund investment in the amount of approximately $29,000,000.00, and its payment of approximately $3,515,396.00 in monthly management fees to Defendant Citigroup Alternative (.25 % (3% annually) of the value of MJX Plus' Falcon Fund investment).

188748.4

111.    As set forth herein, Defendants' conduct was willful, malicious and reckless, and as a direct and proximate result of the foregoing, Plaintiff MJX Plus is also entitled to, and requests punitive damages.

## FOURTH CLAIM

(By MJX Plus against All Defendants for Negligent Misrepresentation)

112.    Plaintiff MJX Plus repeats and realleges each of the allegations contained in Paragraphs 1 through 111 above as if fully set forth herein.

113.    Citi and Citibank had a duty to provide MJX Plus with accurate, honest, truthful and timely information about Plaintiff's Falcon investment. The long-standing business relationships of Sillerman and Sillerman Commercial with Citi and Citibank, and the terms of the Agency Agreement, created a special relationship between the parties such that MJX Plus' reliance on the information provided by Citi and Citibank concerning its Falcon investment was reasonable and justified. Additionally, Citi, Citibank (and Citigroup Alternative and Falcon) in the Offering Memorandum assured MJX Plus that Falcon would be closely monitored and managed by Citigroup Alternative's sophisticated investment personnel. Citi and Citibank, not MJX Plus, possessed unique, peculiar knowledge and sophisticated expertise with respect to the investment, management and philosophy of Citigroup Alternative and Falcon, and MJX Plus reasonably relied on Citi's, Citibank's parent company, and Citibank's representations as a basis for investing in and maintaining its investment in Defendants' Falcon Fund.

114.    Citigroup Alternative and Falcon had a duty to provide MJX Plus with accurate, honest, truthful and timely information concerning MJX Plus' Falcon investment, including, without limitation, the Falcon Fund's investment strategy, management practices and philosophy, financial condition, risk-exposure, investment composition (including, in particular,

188748.4

the extent to which the Falcon Fund was invested in subprime mortgage backed securities), and duration or investment horizon. This duty arose out of MJX Plus' significant investment in the Falcon Fund, Citigroup Alternative's and Falcon's unique and specialized expertise in the securities and investment industry, unique and specialized expertise and knowledge in matters relating to Falcon, and their status as managers, operators and controllers of Falcon's portfolio of investments, all of which created a special relationship between Citigroup Alternative, Falcon and MJX Plus. Additionally, Defendants', in their Offering Memorandum, advised MJX Plus that Falcon's success depended on Citigroup Alternative's and Falcon's expert decision making.

115. As set forth herein, Defendants, individually and in concert with each other, negligently misrepresented the Falcon Fund's investment strategy and practices, management philosophy and practices, financial condition, risk exposure and investment composition, and duration or investment horizon in the Offering Documents, Risk Reports, Quarterly Reports, yearly financial statements, and other statements and disclosures (Paragraphs 42 through 44, 47 through 49, and 54 through 62 above), and in other communications, including telephone conversations and meetings, and documents (Paragraphs 36, and 64 through 80 above), in order to induce MJX Plus to invest in the Falcon Fund, and to cause MJX Plus to maintain its investment in the Falcon Fund. Defendants knew or should have known that material omissions or misstatements were made which would mislead the public and Plaintiff MJX Plus. Defendants failed to exercise reasonable care and make an investigation of the facts, which would have disclosed the omissions and misrepresentations.

116. Citi and Citibank knew, based upon, among other things, the long standing relationship between Citi and Citibank, and Plaintiff MJX Plus' managing member, members and representatives, the terms of the Agency Agreement, and statements made by Defendants in

188748.4

the Offering Memorandum and Falcon Fund Brochure concerning the sophistication and

expertise of Citigroup Alternative's and Falcon's highly trained investment personnel

responsible for managing MJX Plus' Falcon investment, that MJX Plus would rely on Citi's and

Citibank's representations, and Citibank's expertise as MJX Plus' administrative agent.

117.    Citigroup Alternative and Falcon knew, based upon, among other things, their

advertised unique and specialized expertise in the securities and investment industry, unique and

specialized expertise and knowledge in matters relating to the Falcon Fund, and their status as

managers, operators and controllers of the Fund's portfolio of investments, that Plaintiff MJX

Plus, as an investor, would rely on their representations.

118.    MJX Plus invested in Defendants' Falcon Fund in reasonable reliance on these

material omissions and misrepresentations. MJX Plus would not have invested in the Falcon

Fund, and, thereafter, would not have maintained its investment in the Falcon Fund (or, at least,

would have altered its investment to reduce the enormous risk and losses caused by Defendants)

if it had known the truth.

119.    As a result of Defendants' negligent misrepresentations, Plaintiff MJX Plus is

entitled to recover, without limitation, damages in the amount of at least $29,000,000.00, and its

payment of $3,515,396.00 in monthly management fees to Defendant Citigroup Alternative (.25

% (3% annually) of the value of MJX Plus' Falcon Fund investment).    Defendants' conduct

was willful, malicious and reckless. MJX Plus is also entitled to, and requests, punitive

damages.

## FIFTH CLAIM

(By MJX Plus against Citibank for Breach of Fiduciary Duty)

120.    Plaintiff MJX Plus repeats and realleges each of the allegations contained in paragraphs 1 through 119 above as if fully set forth herein.

121.    At all relevant times, Citibank owed a fiduciary duty to Plaintiff MJX Plus. MJX Plus, based on the long standing financial relationship between MJX Plus' managing member, members and representatives, and Citibank, and pursuant to the terms of the Agency Agreement, reposed trust and confidence in the accuracy and truthfulness of Citibank's representations. Pursuant to the terms of the Agency Agreement, Citibank, from on or about September 21, 2005 through on or about January 25, 2008, acted as Administrative Agent for MJX Plus' investment in the Falcon Fund and, among other things, was required to carry out MJX Plus' instructions to effect changes in the composition of MJX Plus' investment in the Fund. Citibank, pursuant to the terms of the Agency Agreement, and its directing of Plaintiff's $50,000,000.00 investment into the Falcon Fund, assumed responsibility and a degree of control over MJX Plus' investment. MJX Plus depended and relied upon Citibank's advice and expertise.

122.    Citibank breached its duty to MJX Plus by: (a) failing to make reasonable and diligent investigation of the statements contained in the Offering Documents and other financial disclosures and communications; (b) failing to provide MJX Plus with truthful and accurate information concerning the Falcon Fund's investment strategy and practices, management philosophy and practices, financial condition, risk exposure, investment composition, and duration or investment horizon in the Offering Documents, Risk Reports, Quarterly Reports, yearly financial statements, and other periodic disclosures and other communications; and (c) acting in Citibank's and other Defendants' own interests to the detriment of Plaintiffs' interests

188748.4

by failing to follow MJX Plus' specific instructions not to sell MJX Plus' interests or assets in the Fund and not to liquidate the Fund and by, instead, selling or permitting the sale of MJX Plus' interests or assets in the Fund, and liquidating or permitting the liquidation of the Fund. Upon information and belief, Defendants did so for their own self-serving purposes of: protecting Citibank and other Defendants from experiencing further losses in connection with the Fund; raising funds to pay the debts that Citibank and other Defendants incurred in connection with their own investments in the Fund; and enabling the Fund to make a repayment to Citi on a credit facility of at least $500,000,000.00 that Citi had entered into for the benefit of the Fund and certain other funds also managed by Citigroup Alternative. The unauthorized sale of MJX Plus' interests or assets in the Fund caused MJX Plus to realize massive losses and lose the opportunity of potentially recouping the loss in value of its investment in the Fund.

123.    As a direct and proximate result of the foregoing, Plaintiff MJX Plus has suffered damages including, but not limited to, a decrease in value of its Falcon Fund investment, a decrease that is believed in the amount of approximately $29,000,000.00, and its payment of $3,515,396.00 in monthly management fees to Defendant Citigroup Alternative (.25 % (3% annually) of the value of MJX Plus' Falcon Fund investment). Citibank's conduct was willful, malicious and reckless. MJX Plus is also entitled to, and requests punitive damages.

## SIXTH CLAIM

(By MJX Plus against Citigroup Alternative for Breach of Fiduciary Duty)

124.    Plaintiff MJX Plus repeats and realleges each of the allegations contained in paragraphs 1 through 123 above as if fully set forth herein.

188748.4

125.    At all relevant times, Citigroup Alternative, as investment manager of the Falcon Fund, owed a fiduciary duty to Plaintiff MJX Plus. MJX Plus, based on, among other things, Citigroup Alternative's status as investment manager, the Offering Memorandum, the long standing financial relationship between MJX Plus' managing member, members and representatives, with Citi and Citibank, and the fact that Plaintiff, through its managing member, members and representatives, was introduced to Citigroup Alternative by Citi and Citibank, reposed trust and confidence in the accuracy and truthfulness of Citigroup Alternative's representations on matters relating to Falcon. Citigroup Alternative, at all times relevant to this Amended Complaint, was Falcon's investment manager and charged with the responsibility and authority to, among other things, invest, manage, operate, control and direct Falcon's portfolio of investments. Defendants, through their Offering Documents, advised MJX Plus that the success of MJX Plus' Falcon investment depended, in part, on Citigroup Alternative's expert investment decision making and management. Based on the foregoing, Citigroup Alternative exercised discretionary authority and control over MJX Plus' investments in Falcon.  MJX Plus reasonably depended and relied upon Citigroup Alternative's and, in fact, paid Citigroup Alternative significant monthly management fees totaling $3,515,396.00 during the period from in or about September 2005 through in or about January 2009.

126.    Citigroup Alternative breached its fiduciary duty to MJX Plus by: (a) failing to make reasonable and diligent investigation of the statements contained in the Offering Documents and other financial disclosures and communications; (b) failing to provide MJX Plus with truthful and accurate information concerning the Falcon Fund's investment strategy and practices, management philosophy and practices, financial condition, risk exposure, investment composition, and duration or investment horizon in the Offering Documents, monthly Risk

188748.4

Reports, Quarterly Reports, yearly financial statements and periodic disclosures and other communications; (c) failing to rebalance MJX Plus' Falcon Fund investments after receiving specific share allocation instruction from MJX Plus; and (d) carrying out and/or failing to prevent Defendants from engaging in a series of self-interested transactions consisting of, among other things, the unauthorized sale of MJX Plus' interests or assets in the Fund, and the liquidation of the Fund for purposes of, upon information and belief, protecting Defendants Citi and Citibank from experiencing further losses in connection with the Fund, raising funds to pay the debts that Citi and Citibank incurred in connection with their own investments in the Fund, and enabling the Fund to make repayment to Citi on a credit facility of at least $500,000,000.00 that Citi had entered into for the benefit of the Fund and certain other funds also managed by Citigroup Alternative. Such transactions were done for the benefit of Citi, Citibank and the other Defendants to the great detriment of MJX Plus, causing MJX Plus to realize massive losses and to lose the opportunity to potentially recoup the loss in value of MJX Plus' investment in the Fund.

127.    As a direct and proximate result of the foregoing, Plaintiff MJX Plus has suffered damages including, but not limited to, a decrease in value of its Falcon Fund investment believed to be in the amount of approximately $29,000,000.00, and its payment of $3,515,396.00 in monthly management fees to Defendant Citigroup Alternative (.25 % (3% annually) of the value of MJX Plus' Falcon Fund investment). Citigroup Alternative's conduct was willful, malicious and reckless. MJX Plus is also entitled to, and requests, punitive damages.

## SEVENTH CLAIM

### (By MJX Plus and MJX Special against Citibank for its Breach Of the Administrative Agency Agreement)

128.    Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 127 above as if fully set forth herein.

129.    Plaintiffs and Citibank entered into the Agency Agreement, in writing, which is described more fully above.

130.    Under the terms of the Agency Agreement, Plaintiff MJX Special agreed to pay Citibank a structuring fee, and quarterly fees for Citibank's structuring of a transaction in which Plaintiff MJX Plus invested in the Falcon Fund, and for Citibank's continued administration and monitoring of Plaintiff MJX Plus' Falcon Fund investment.  Citibank, pursuant to the Agency Agreement, agreed to strictly adhere to Plaintiff MJX Plus' instructions concerning its interest in the Falcon Fund (Paragraphs 35 through 41 above).

131.    Plaintiffs performed all of their obligations under the Agency Agreement. However, as described in Paragraphs 81 through 87 above, Citibank breached the Agency Agreement by: failing to follow MJX Plus' specific instructions to reallocate the composition of MJX Plus' investment in the Falcon Fund and, thereafter, failing to rebalance MJX Plus' investment to maintain the reallocation percentages specified by MJX Plus; and by failing to follow MJX Plus' specific instructions not to sell MJX Plus' interests or assets in the Fund and not to liquidate the Fund.

132.    As a direct and proximate result of Citibank's breach, Plaintiffs suffered damages including, but not limited to, (a) a decrease in value of the MJX Plus Falcon Fund investment of in excess of $9,000,000.00 during the period in which Defendants failed to strictly adhere to MJX Plus' share allocation instructions, (b) MJX Special's payment of the $500,000.00

structuring fee to Citibank, (c) MJX Special's quarterly payments to Citibank, during the period from in or about September 2005 through in or about January 2008, in the total amount of $149,020.00 (.05% (.20% annually) of the then quarter-end market value of Plaintiff MJX Plus' entire investment portfolio, including its share in the Falcon Fund), and (d) MJX Plus' monthly management fees paid to Citigroup Alternative, in the total amount of $3,515,396.00 (.25 % (3% annually) of the value of MJX Plus' Falcon Fund investment).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the following relief:

<u>As to Plaintiff MJX Plus' Federal Claims</u>

133.    Awarding Plaintiff compensatory damages as a result of the wrongs alleged in the First Claim of the Amended Complaint;

134.    Awarding Plaintiff compensatory damages as a result of the wrongs alleged in the Second Claim of the Amended Complaint;

<u>As to Plaintiffs' New York Claims</u>

135.    Awarding Plaintiff MJX Plus compensatory damages of an amount in excess of approximately $29,000,000.00, plus $3,515,396.00 representing the monthly management fees paid by MJX Plus to Citigroup Alternative, and punitive damages as a result of the wrongs alleged in the Third Claim of the Amended Complaint.

136.    Awarding Plaintiff MJX Plus compensatory damages of an amount in excess of approximately $29,000,000.00, plus $3,515,396.00 representing the monthly management fees paid by MJX Plus to Citigroup Alternative, and punitive damages as a result of the wrongs alleged in the Fourth Claim of the Amended Complaint.

188748.4

137.    Awarding Plaintiff MJX Plus compensatory damages of an amount in excess of approximately $29,000,000.00, plus $3,515,396.00 representing the monthly management fees paid by MJX Plus to Citigroup Alternative, and punitive damages as a result of the wrongs alleged in the Fifth Claim of the Amended Complaint.

138.    Awarding Plaintiff MJX Plus compensatory damages of an amount in excess of approximately $29,000,000.00, plus $3,515,396.00 representing the monthly management fees paid by MJX Plus to Citigroup Alternative, and punitive damages as a result of the wrongs alleged in the Sixth Claim of the Amended Complaint.

139.    Awarding Plaintiffs compensatory damages of an amount in excess of $9,500,000.00, plus $149,020.00 representing quarterly payments made by Plaintiff MJX Special to Citibank, and $3,515,396.00 representing the monthly management fees paid by MJX Plus to Citigroup Alternative as a result of the wrongs alleged in the Seventh Claim of the Amended Complaint.

## As to All Claims

140.    Awarding Plaintiffs their costs and expenses in this litigation, including reasonable attorneys' fees, and other costs and disbursements, and for such other and further relief as the Court may deem just and proper.

188748.4

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: October 14, 2009
       New York, New York

DORNBUSH SCHAEFFER STRONGIN
& VENAGLIA, LLP

By:

Richard Schaeffer (RS-0019)
J. Cody Fitzsimmons (JF5272)
Adler Bernard (AB0233)
Attorneys for Plaintiffs
747 Third Avenue
New York, New York 10017
(212) 759-3300

58                                                    188748.4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x

MJX PLUS LLC and                                    :  Civil Action No.: 08-CV-10931(TPG)
MJX SPECIAL OPPORTUNITIES LLC,                      :  ECF Case
                                                    :
                                        Plaintiffs, :
                                                    :
                         - against -                :
                                                    :
CITIGROUP INC., CITIBANK, N.A.,                     :
CITIGROUP ALTERNATIVE INVESTMENTS LLC,              :
AND FALCON STRATEGIES TWO LLC,                      :
                                                    :
                                       Defendants.  :
-------------------------------------------------- x

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiffs' AMENDED COMPLAINT was served by Federal

Express this 14th day of October 2009 on the following counsel of record:

Jayant W. Tambe, Esq.
Jones Day
222 East 41st Street
New York, NY 10017

Dated: October 14, 2009
       New York, New York

_____
          Adler Bernard