UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| | x |
| MJX PLUS LLC and<br>MJX SPECIAL OPPORTUNITIES LLC, | : Civil Action No.: 08-CV-10931(TPG)<br>: ECF Case |
| | : |
| Plaintiffs, | : |
| | : |
| - against - | : |
| | : |
| CITIGROUP INC., CITIBANK, N.A.,<br>CITIGROUP ALTERNATIVE INVESTMENTS LLC,<br>AND FALCON STRATEGIES TWO LLC, | :<br>:<br>: |
| | : |
| Defendants. | : |
| | x |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Richard Schaeffer (RS-0019)
J. Cody Fitzsimmons (JF-5272)
Adler Bernard (AB-0233)

DORNBUSH SCHAEFFER
STRONGIN & VENAGLIA, LLP
747 Third Avenue
New York, New York 10017
Telephone:  212-759-3300
Facsimile:  212-753-7673

*Attorneys For Plaintiffs*

189547.4

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................................ i

**PRELIMINARY STATEMENT** ........................................................................ 1

**STATEMENT OF FACTS** ................................................................................ 2

**ARGUMENT** ...................................................................................................... 3

I.    DEFENDANTS ARE PRECLUDED FROM REARGUING THE
PURPORTED DISCLAIMERS AND THE RELEASE AND
COVENANT NOT TO SUE AS BASES FOR DISMISSAL BECAUSE
THOSE ARGUMENTS HAVE ALREADY BEEN REJECTED BY THIS
COURT, AND, IN ANY CASE, DO NOT BAR ANY OF PLAINTIFFS'
CLAIMS. ........................................................................................................ 3

    A.    The Law of The Case Precludes Defendants From Rearguing The
Purported Disclaimers, And Release And Covenant Not To Sue As
Bases For Dismissing The Amended Complaint. ......................................... 3

    B.    The Purported Boilerplate Disclaimers and General Risk Disclosures
In Defendants' Pre-Investment Documents Do Not Bar Any Of MJX
Plus' Claims As MJX Plus Reasonably Relied On Defendants'
Misrepresentations ...................................................................................... 5

    C.    The Release And Covenant Not To Sue Does Not Bar MJX Plus'
Common Law Fraud And Negligent Misrepresentation Claims
(Or Any Other Claim). ................................................................................ 6

II.    MJX PLUS HAS ADEQUATELY PLEAD FEDERAL SECURITIES
FRAUD, STATE COMMON LAW FRAUD AND NEGLIGENT
MISREPRESENTATION CLAIMS ............................................................. 8

    A.    MJX Plus Has Adequately Plead Numerous Written And Oral False
Statements and Omissions By Defendants And To The Extent That
MJX Plus Has Not Alleged The "Specific Investments" Made By
Defendants, It Is Not Legally Required Or, In Fact, Able, To Do So
As Such Information Is In The Peculiar Knowledge Of Defendants. ........... 9

        1.    MJX Plus Has Alleged Facts Showing That Defendants Had
Motive And Opportunity To Commit Fraud ...................................... 12

        2.    The Facts Alleged Support A Finding Of Defendants'
Conscious Misbehavior Or, At The Very Least, That
Defendants Behaved Recklessly. ....................................................... 13

C.    Plaintiffs Have Adequately Pled Loss Causation..........................................15

D.    MJX Plus' Reliance On Defendants' Misrepresentations Was
      Reasonable. ..................................................................................18

III.  THE PURPORTED EXCULPATION CLAUSES THAT DEFENDANTS
      CLAIM PRECLUDE MJX PLUS' NEGLIGENT
      MISREPRESENTATION AND BREACH OF FIDUCIARY CLAIMS
      DO NOT APPLY TO SUCH CLAIMS, AND, IN ANY CASE, ARE NOT
      PROPERLY BEFORE THIS COURT....................................................18

IV.   DEFENDANTS' CLAIMS THAT MJX PLUS DISCLAIMED A
      FIDUCIARY RELATIONSHIP WITH CITIBANK AND CITIGROUP
      ALTERNATIVE APPEAR TO HAVE ALREADY BEEN
      CONSIDERED AND REJECTED BY THIS COURT AND, IN ANY
      CASE, MJX PLUS HAS ADEQUATELY ALLEGED FIDUCIARY
      RELATIONSHIPS WITH BOTH DEFENDANTS. ..............................20

V.    PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM AGAINST
      CITIBANK FOR BREACH OF THE AGENCY AGREEMENT.........................23

CONCLUSION ..........................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Am. Tissue Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
    351 F. Supp. 2d 79 (S.D.N.Y. 2004) .................................................................... 22

*ASI Sign Systems, Inc. v. Architectural Systems, Inc.,*
    1999 U.S. Dist. Lexis11531 (S.D.N.Y.) .............................................................. 8

*BDO Seidman, LLP v. Mark E. Bloom,*
    2004 NY Slip Op 514194U, 5 Misc.3d 1018A, 799 N.Y.S.2d 159
    (Sup. Ct. N.Y. Ct'y 2004) ................................................................................... 25

*Citibank, N.A., v. Itochu Int'l, Inc.,*
    2003 U.S. Dist. Lexis 5519 (S.D.N.Y.) ............................................................... 7

*City of Sterling Heights Police and Fire Retirement Sys. v. Abbey National, PLC, et. al.,*
    423 F. Supp. 2d 348 (S.D.N.Y. 2006) ................................................................ 17

*Consorcio Prodipe, S.A. de. C.V. v. Vinci, S.A.,*
    544 F. Supp. 2d 178 (S.D.N.Y. 2008) ................................................................ 7

*Credit Suisse First Boston Corp., et al. v. Arm Fin. Group, Inc., et. al,*
    2001 U.S. Dist. Lexis 3332 (S.D.N.Y.) ............................................................... 6

*Cummings v. Artuz,*
    237 F. Supp.2d 475 (S.D.N.Y. 2002) ................................................................. 4

*Dallas Aerospace, Inc. v. CIS Air Corp.,*
    352 F.3d 775 (S.D.N.Y. 2003)............................................................................ 5

*DaPuzzo, et. al. v. Reznick Fedder & Silverman,*
    14 A.D.3d 302, 788 N.Y.S.2d 69 (1st Dept. 2005)............................................ 10

*Dover Ltd., et. al. v. A.B. Watley, Inc.,*
    423 F. Supp. 2d 303 (S.D.N.Y. 2006) ................................................................ 13

*Dresner v. Utlity.com, Inc.,*
    371 F. Supp. 2d 476 (S.D.N.Y. 2005) ................................................................ 4

*E+Trade Financial Corp. v. Deutsche Bank AG,*
    2008 U.S. Dist. Lexis 46451 (S.D.N.Y.) ............................................................ 19

*ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.,*
    2005 U.S. Dist. Lexis 42993 (N.D.N.Y.)............................................................ 19

*Emergent Capital Inv. Mgmt., LLC v. Stonepath, Inc.,*
    343 F.3d 189 (2d Cir. 2003) ......................................................................... 15, 17

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
    12 N.Y.3d 553, 883 N.Y.S.2d 147 (2009)........................................................... 8

*Fitzgerald v. Fahnestock & Co., et al.,*
    2008 N.Y. Slip Op 1068, 48 A.D.3d 246, 850 N.Y.S.2d 452 (1st Dep't 2008) .......................... 8

**<u>Cases</u>**                                                                         <u>Page(s)</u>

*Ganino, et. al. v. Citizens Util. Co., et. al.,*
   228 F.3d 154 (2d Cir. 2000) .................................................................. 12

*Gross v. Sweet,*
   49 N.Y. 2d 102, 424 N.Y.S.2d 365 (1979) ..................................... 18, 19

*H&H Acquisition Corp. etc., v. Financial Intranet Holdings, et al.,*
   1999 U.S. Dist. Lexis 16861 (S.D.N.Y.) ............................................... 8

*Hall v. The Children's Place Retail Stores, Inc., et. al.,*
   580 F. Supp. 2d 212 (S.D.N.Y. 2008) ................................................. 14

*Heller v. Goldin Restructuring Fund, LP, et. al.,*
   2008 U.S. Dist. Lexis 103354 .............................................................. 13

*Hydro Investors, Inc. v. Trafalgar Power, Inc.,*
   227 F.3d 8 (2d Cir. 2000) ...................................................................... 9

*In re Authentidate Holding Corp. Sec. Litig.,*
   2009 U.S. Dist. Lexis 23462 *(S.D.N.Y.)* ............................................ 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
   *574 F.3d 29 (2d Cir.2009)* .................................................................. 15

*In re Prudential Sec. Inc. Ltd. P'shps Litig.,*
   930 F. Supp. 68 (S.D.N.Y. 1996) .......................................................... 6

*In re Veeco Instruments, Inc. Sec. Litig.,*
   2006 U.S. Dist. Lexis 13226 (S.D.N.Y.) ............................................. 14

*In the Matter of Lipper Holdings, LLC v. Trident Holdings, LLC,*
   1 A.D.3d 170, 766 N.Y.S.2d 561 *(1st Dep't 2003)* ............................ 25

*JPMorgan Chase Bank, N.A., v. The IDW Group, LLC,*
   2009 U.S. Dist. Lexis 9207 (S.D.N.Y.) ............................................... 21

*Kirby v. Coastal Sales Ass'n Inc.,*
   82 F. Supp. 2d 193 (S.D.N.Y. 2000) ................................................... 22

*Koch v. Greenberg,*
   2008 U.S. Dist. Lexis 76890 (S.D.N.Y.) ............................................... 5

*Lentell v. Merrill Lynch & Co.,*
   396 F.3d 161 (2d Cir. 2005) ........................................................... 15, 16

*Lowenbraun, et ano. v. L.F. Rothschild, et al.,*
   685 F. Supp. 336 (S.D.N.Y. 1988) ...................................................... 22

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,*
   354 F. Supp. 2d 293 (S.D.N.Y. 2004) ................................................... 7

*McGuire Children LLC v. Huntress,*
   2009 N.Y. Misc. Lexis 1520 (Sup. Ct., Eric C'ty) ............................. 20

*MJX Plus, et ano. v. Citibank, et al.,*
   2009 U.S. Dist. Lexis 70463 (S.D.N.Y.) ..................................... passim

189547.4

**Cases**                                                              **Page(s)**

*Monica Knoll v. Equinox Fitness, et al.,*
2003 U.S. Dist. Lexis 23264 (S.D.N.Y.) ............................................................ 7

*Nathel v. Siegal, et. al.,*
2008 U.S. Dist. Lexis 86297 (S.D.N.Y. 2008) .................................................. 17

*National Council of Young Israel  v. Wolf, et al.,*
963 F. Supp. 276 (S.D.N.Y. 1997) .................................................................... 8

*Novak v. Merrill Lynch & Co.,*
216 F.3d. 300 (2d Cir. 2000) ............................................................................ 14

*Penato v. George, et al.,*
52 A.D.2d 939, 383 N.Y.S.2d 900 (2nd Dept. 1976) ...................................... 22

*Rice v. Harley Davidson,*
2005 U.S. Dist. Lexis 44740 (N.D.N.Y.) .......................................................... 19

*Robin Bay Assocs., LLC v. Merrill Lynch & Co.,*
2008 U.S. Dist. Lexis 43679 (S.D.N.Y.) .......................................................... 21

*Rothman v. Gregor,*
220 F.3d 81 (2d Cir. 2000) ................................................................................ 18

*Spencer Trask Software & Info. Servs. LLC v. Rpost Int'l Ltd.,*
383 F.Supp.2d 428 (S.D.N.Y. 2003) .................................................................. 6

*Stokes v. Lusker,*
2009 U.S. Dist. Lexis 23471 (S.D.N.Y.) ............................................................ 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) .......................................................................................... 12

*The Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc Of America Sec. LLC,*
592 F. Supp.2d 608 (S.D.N.Y. 2009) ............................................................... 22

*Tomoka Re Holdings, Inc., et ano. v. Loughlin, et al.,*
2004 U.S. Dist. Lexis 8931 (S.D.N.Y.) .............................................................. 7

*Turkish, et al. v. Kasenetz, et al.,*
27 F.3d 23 (2d Cir. 1994) .................................................................................... 7

*Vacold LLC v. Cerami,*
545 F.3d 114 (2d Cir. 2008) ................................................................................ 8

*Van Dyke Prods. v. Eastman Kodak Co.,*
12 N.Y. 2d 301, 239 N.Y.S. 2d 337 (1963) ...................................................... 19

*Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,*
956 F.2d 1245 (2d cir. 1992) .............................................................................. 4

*Warner Theatre Assoc. Ltd. P'ship. v. Metropolitan Life Ins.,*
149 F.3d 134, 136 (2d Cir. 1998) ............................................................... 5, 10

*Wiener, et al. v. Lazard Freres & Co. et al.,*
241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dept. 1998) .......................................... 23

189547.4

**Statutes**                                                                 **Page(s)**

15 U.S.C. § 78cc(a).................................................................................................. 4, 8

Plaintiffs MJX Plus LLC ("MJX Plus") and MJX Special Opportunities LLC ("MJX Special") (collectively, "Plaintiffs") respectfully submit this Memorandum Of Law in opposition to the motion of Defendants Citigroup Inc. ("Citigroup"), Citibank N.A. ("Citibank"), Citigroup Alternative Investments LLC ("Citigroup Alternative") and Falcon Strategies Two LLC ("Falcon", the "Falcon Fund" or the "Fund") (collectively, "Defendants") to dismiss the Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Through their fraudulent investment scheme, Defendants defrauded Plaintiffs out of tens of millions of dollars. In their first motion, Defendants sought to dismiss the original Complaint based on, among other things, certain purported releases, covenants not to sue, disclosures, disclaimers and exculpatory clauses, which were all devised and employed by Defendants as part of their fraudulent scheme in a willful and anticipatory attempt to insulate themselves from liability for their own fraudulent and otherwise wrongful conduct. In the present motion to dismiss the Amended Complaint, Defendants essentially reassert arguments that they previously made, some of which have already been expressly rejected by this Court and the others of which are unavailing.

To the extent that Defendants addressed the Court's Opinion, dated August 10, 2009 (*MJX Plus, et ano. v. Citibank, et al.*, 2009 U.S. Dist. Lexis 70463 (S.D.N.Y.), the "August Opinion") and the corresponding amendments set forth in the Amended Complaint, Defendants do so in a manner that is contradictory (at times, disingenuous) and unavailing. For example:

- Defendants attempt to fault Plaintiffs for failing to allege the specific investments made by the Fund. However, as Defendants well know, such information was intentionally withheld from Plaintiffs by Defendants.

- When Plaintiffs, after observing a decline in the value of their investment in the Fund, did ask Defendants for information regarding the specific investments made by the Fund, including, in particular, its exposure to risky and highly volatile hybrid adjustable rate mortgages and private subprime mortgage backed securities, Defendants, over a six month period, provided Plaintiffs with information that Defendants later admitted had been false!

- After Defendants admitted that they provided false information regarding the high-risk, nonconforming nature of investments made by the Fund, Plaintiffs, in an attempt to recoup losses and avoid future losses, gave Defendants specific instructions regarding changes in the composition of Plaintiffs' investment in the Fund as well as to refrain from liquidating the Fund. In direct violation of their contractual and fiduciary duties, and contrary to their repeated representations that the Fund was a long-term investment with at least a five-year investment horizon, Defendants failed to carry out Plaintiffs' instructions and prematurely liquidated the Fund so that Falcon could repay a loan to Citigroup, thereby causing Plaintiffs to realize further catastrophic losses.

To the extent the Amended Complaint does not allege certain types of specific information identified in the August Opinion (*e.g.*, the specific investments made by the Fund), it explains that it does not do so because Plaintiffs do not have that information, and that such information is within Defendants' "peculiar knowledge." Allowing Defendants to prevail on their motion due to a failure to allege facts that are in the "peculiar knowledge" of Defendants would, *inter alia*, incentivize Defendants and other funds and financial services firms to withhold information regarding specific investments made and thus preclude investors such as Plaintiffs from ever recovering for securities fraud. Plaintiffs respectfully submit that that is not, and should not be, the law. Defendants' other arguments to dismiss the claims pled in the Amended Complaint are also unavailing. Accordingly, Defendants' motion to dismiss should be denied in all respects.

## STATEMENT OF FACTS

With respect to the pertinent facts and allegations, the Court is respectfully referred to the sections of the Amended Complaint headed: Nature of the Action (AC, ¶¶ 1-23) and Specific Factual Allegations (AC, ¶¶ 35-88). (A copy of the Amended Complaint is annexed as Exhibit 1

2

to the Declaration of Richard Schaeffer In Support of Plaintiffs' Opposition to Defendants'

Motion To Dismiss dated December 16, 2009 (the "Schaeffer Decl.").)

## ARGUMENT

On a motion to dismiss, the standard of review is "heavily weighted in favor of the

plaintiff." *Stokes v. Lusker*, 2009 U.S. Dist. Lexis 23471, at *10 (S.D.N.Y.). The Court is

required "to accept the material facts alleged in the complaint as true," and "read [the] complaint

generously, drawing all reasonable inferences from its allegations in favor of the plaintiff." *Id.*

The issue on a motion to dismiss is whether the plaintiff has asserted "enough facts to state a

claim to relief that is plausible on its face." *Id.* at *11. In addition, "[t]his 'plausibility standard'

is a flexible one.' [Citation omitted.]" *Id.*

As discussed below, the Amended Complaint sets forth detailed, factual allegations as to

each of the elements of the claims. Plaintiffs have provided the Court with more than enough

facts to state claims that are plausible. Accepting the allegations in the Amended Complaint as

true and weighing the issues and drawing all reasonable inferences in favor of Plaintiffs compels

the conclusion that Plaintiffs are entitled to offer further evidence to support their claims.

I.   DEFENDANTS ARE PRECLUDED FROM REARGUING THE PURPORTED
     DISCLAIMERS AND THE RELEASE AND COVENANT NOT TO SUE AS
     BASES FOR DISMISSAL BECAUSE THOSE ARGUMENTS HAVE
     ALREADY BEEN REJECTED BY THIS COURT, AND, IN ANY CASE, DO
     NOT BAR ANY OF PLAINTIFFS' CLAIMS.

     A.   The Law of The Case Precludes Defendants From Rearguing The Purported
          Disclaimers, And Release And Covenant Not To Sue As Bases For Dismissing
          The Amended Complaint.

Defendants argue that the purported disclaimers of liability in Defendants' Offering

Memorandum, Offering Memorandum Supplement and Falcon Brochure (collectively the

"Offering Documents"), and a purported release and covenant not to sue set forth in Section 4 of

the September 21, 2005 Administrative Agency Agreement (the "Agency Agreement") warrant

3

dismissal of MJX Plus' securities fraud, common law fraud and negligent misrepresentation claims (Claims 1-4). Specifically, Defendants assert that, due to the purported express disclaimers, MJX Plus is unable to establish the element of reasonable reliance needed to support those claims. Moving Brief, pp. 20–21. In addition, Defendants argue that such purported disclaimers and the release and covenant not to sue[1] warrant dismal of Plaintiffs' common law fraud and negligent misrepresentation claims (Claims 3–4). Moving Brief, pp. 21-22.

Defendants' arguments are identical to the arguments they asserted in their motion to dismiss the original Complaint. However, the Court, in the August Opinion (* 5), explicitly ruled that:

> "Defendants contend that the action [the original Complaint] is barred by a 'Covenant Not To Sue' set forth in section 4 of an agreement entitled 'Administrative Agreement.' The court finds that this defense is without merit. Defendants also rely on what they consider to be disclaimers of liability contained in the various offering documents. The court finds no merit in the disclaimer argument, except possibly with relation to the brochure." (Underscoring added.)

This Court's ruling on these matters is the law of the case. Defendants should not be permitted to reargue these matters as Defendants were previously heard on such matters, the pertinent law governing the applicability of the purported disclaimers and the covenant not to sue has not changed, and MJX Plus has relied on such rulings in asserting claims in the Amended Complaint. *See Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d cir. 1992) ("[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

---

[1] Defendants do not argue that the purported release and covenant not to sue bars MJX Plus' securities fraud claims. In any event, it should be noted that this Court has repeatedly interpreted Section 29(a) of the Exchange Act to prohibit such contractual provisions that purport to prospectively or anticipatorily waive a plaintiff's right to pursue claims under the Exchange Act of which the plaintiff was not yet aware. *See Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 490 (S.D.N.Y. 2005) (holding that "'it is well settled that parties cannot use contractual limitation of liability clauses to shield themselves for their own fraudulent conduct,' [citation omitted]" and, "[t]he release at issue here did not constitute a settlement of an existing dispute, but rather purported prospectively to waive plaintiffs' rights to pursue causes of action of which they were not yet aware. [Case citation and notation omitted.] Section 29(a) forbids enforcement of that type of contract to bar Exchange Act claims. [Citations omitted.]"

189547.4

manifest injustice.' [Citation omitted]"); *Cummings v. Artuz*, 237 F. Supp.2d 475, 483 (S.D.N.Y.

2002) ("[a]lthough the law of the case doctrine is not absolute, it 'expresses a general reluctance,

absent good cause, to reopen rulings that the parties relied upon.'' (Citation omitted.)).

Therefore, the law of the case precludes Defendants from rearguing the purported

boilerplate disclaimers, general risk disclosures, and release and covenant not to sue as bases for

dismissing Claims 1 through 4 of the Amended Complaint.  However, even if the Court were to

permit Defendants to reassert these arguments, they should, once again, be rejected.

      B.      The Purported Boilerplate Disclaimers and General Risk Disclosures
In Defendants' Pre-Investment Documents Do Not Bar Any Of MJX Plus'
Claims As MJX Plus Reasonably Relied On Defendants' Misrepresentations.

Defendants' Offering Documents contain nothing more than general risk disclosures and

boilerplate, general disclaimers that simply offer generic cautionary language about possible

setbacks relating to, among other things, investments in securities.  (*See* Tambe Decl., Exhibits F

and H.)  Such general boilerplate disclaimers and disclosures fail to cast doubt on the

reasonableness of MJX Plus' reliance on Defendants' misrepresentations. *See Dallas Aerospace,*

*Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (S.D.N.Y. 2003) (holding that a party cannot defeat a

claim of fraud by simply relying on boilerplate, general disclaimers)*; Koch v. Greenberg,* 2008

U.S. Dist. Lexis 76890, at * 8 (S.D.N.Y.).

Even if Defendants had made more than boilerplate, general disclaimers, MJX Plus'

reliance on Defendants' written and oral financial disclosures (misrepresentations) would clearly

fall within the "peculiar knowledge exception" to the prohibition on claims of reliance in the face

of investment disclaimers. *See Warner Theatre Assoc. Ltd. P'ship. v. Metropolitan Life Ins.*, 149

F.3d 134, 136 (2d Cir. 1998).

MJX Plus' fraud claims (Claims 1-3) and negligent misrepresentation claim (Claim 4) are

189547.4

supported by allegations which clearly demonstrate that, at the time Defendants made their oral

and written misrepresentations concerning the Fund's specific holdings and Defendants'

investment strategy and practices, Defendants were in possession of information known only to

Defendants, and beyond that which could have been ascertained by MJX Plus. AC, ¶¶ 64-78.

For example, Defendants had superior and peculiar knowledge and information concerning the

Fund's specific investments, and actual investment philosophy, management and practices, as

well as the actual composition (and degree of risk) of the Falcon Fund's investment portfolios.[2]

AC, ¶¶ 49, 64-80. Accordingly, not only was it reasonable for MJX Plus to rely upon

Defendants' misrepresentations, Plaintiffs, in point of fact, had no choice but to rely on such

misrepresentations.

C.    The Release And Covenant Not To Sue Does Not Bar MJX Plus' Common
        Law Fraud And Negligent Misrepresentation Claims (Or Any Other Claim).

The Amended Complaint (AC, ¶¶ 36, 42-44, 47-49, and 54-80) clearly sets forth

allegations of Defendants' knowing, fraudulent conduct, specifically Defendants' oral and

written misrepresentations prior to Plaintiffs' decision to invest in, and thereafter remain invested

in, the Fund. As part of that transaction (which was structured by Defendants), and based upon

---

[2] Defendants' assertion that the disclaimers in Defendants' Offering Documents trigger the safe harbor provisions of the PSLRA and application of the "bespeaks caution" doctrine (Moving Brief, p. 21) is incorrect. The Amended Complaint clearly alleges that at the time that Defendants drafted and distributed the Offering Documents and post-investment disclosures, Defendants knew, or were reasonably certain, that they would not implement the strategies and practices cited therein, including without limitation, those relating to risk monitoring and risk management. Therefore, the safe harbor provision and the "bespeaks caution" doctrine do not apply. *See In re Prudential Sec. Inc. Ltd. P'shps Litig.*, 930 F. Supp. 68, 74 (S.D.N.Y. 1996) (finding that: "[w]arnings of possible detriment are insufficient if they are simply a smoke screen to cover a company's internal reasonably informed certainty of detriment."); *Spencer Trask Software & Info. Servs. LLC v. Rpost Int'l Ltd.*, 383 F.Supp.2d 428, 459 (S.D.N.Y. 2003) (finding that "courts have refused to apply the "bespeaks caution" doctrine at the pleading stage "where the defendants are alleged to have information that makes even the cautionary statements fraudulent.")). In addition, Defendants' December 2007 admission that their prior disclosures were false (AC, ¶¶ 16 and 77) prohibits application of the PSLRA's safe harbor provisions and the "bespeaks caution" doctrine because they are not intended to shield Defendants' knowingly fraudulent misrepresentations. *See In re Prudential*, 930 F. Supp. at 72.; *Credit Suisse First Boston Corp., et al. v. Arm Fin. Group, Inc., et. al*, 2001 U.S. Dist. Lexis 3332, *23 (S.D.N.Y.) (holding that, as is the case here, the "bespeaks caution" doctrine does not apply when plaintiffs assert that the misrepresenting party made material omissions of facts and misconstrued "hard facts," and the information relied upon went beyond the misrepresenting party's projections and opinions.)

Defendants' false and misleading representations and material omissions, Plaintiffs agreed to enter into the Agency Agreement. AC, ¶ 39. Defendants cannot now use the purported, "contractual limitation of liability clauses [Section 4 of the Agency Agreement] to shield themselves from liability for their own fraudulent conduct. [Citation omitted.]" *Turkish, et al. v. Kasenetz, et al.*, 27 F.3d 23, 27-28 (2d Cir. 1994). In addition to fraud-based claims, this prohibition has been applied to other claims. *Citibank, N.A., v. Itochu Int'l, Inc.*, 2003 U.S. Dist. Lexis 5519, at *9 (S.D.N.Y.) (negligent misrepresentation); *Tomoka Re Holdings, Inc., et ano. v. Loughlin, et al.*, 2004 U.S. Dist. Lexis 8931, *16 (S.D.N.Y.) (gross negligence).[3]

Also, Defendants, similar to a practice used in their motion to dismiss the original Complaint, omit, in a misleading manner, a portion of the full text of Section 4 of the Agency Agreement that explicitly limits the purported release and covenant not to sue to claims that could have been raised or asserted by Plaintiffs "on or before the date hereof." MJX Plus' common law fraud claims and negligent misrepresentation claims relate to Defendants' knowing fraudulent conduct committed after the parties entered into the Agency Agreement. It is well settled in this district that a release (and by logical extension, a covenant not to sue) does not bar claims arising from actions after the execution of the release (and covenant not to sue). *See Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004) ("[a] release that employs general terms will not bar claims outside the parties' contemplation at

---

[3] In addition, the purported release and covenant not to sue should be set aside as they were procured by fraud. *See Monica Knoll v. Equinox Fitness, et al.*, 2003 U.S. Dist. Lexis 23264,*21 (S.D.N.Y.) ( "[a]s with any other contractual release, 'circumstances evincing fraudulent inducement, misrepresentation, mutual mistake, or duress would justify setting aside the release.' [Citation omitted.]"); and *Consorcio Prodipe, S.A. de. C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008) ("a release may be ineffectual if it is shown to have been procured by fraud".) As set forth below (pp. 8-18), Plaintiffs have set forth allegations supporting claims of securities fraud, common law fraud, and negligent misrepresentation, and have sufficiently pled that, as part of Defendants' fraudulent scheme, Defendants induced Plaintiffs to enter into the Agency Agreement, which contains the purported release and covenant not to sue (and other agreements such as the MJX Plus LLC Agreement and the Falcon LLC Agreement). AC, ¶¶ 35-37. Accordingly, the purported release and covenant not to sue should also be set aside as procured by fraud and thus not stand as a bar to any of Plaintiffs' claims.

189547.4

the time the release was executed. New York law does not construe a general release to bar claims for injuries unknown at the time the release was executed, even when the release contains broad language."); *ASI Sign Systems, Inc. v. Architectural Systems, Inc.*, 1999 U.S. Dist. Lexis 11531, **15-16 (S.D.N.Y.) ("... a general release does not bar claims arising from defendant's actions after the execution of the release [citation omitted].")[4]

## II.   MJX PLUS HAS ADEQUATELY PLEAD FEDERAL SECURITIES FRAUD, STATE COMMON LAW FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS

The Amended Complaint sets forth detailed, factual allegations as to each of the elements of Plaintiffs' claims of securities fraud under Sections 10(b), 20(a)[5] of the Securities Exchange Act of 1934 (Claims 1 and 2), and common law fraud and negligent misrepresentation under New York law (Claims 3 and 4). As set forth in the Amended Complaint (AC, ¶¶ 89-99) and more fully below (pp. 9-18), MJX Plus has met its burden for pleading securities fraud as MJX Plus has adequately alleged that "'in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury.'[Citation omitted.]" *Vacold LLC v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008). MJX Plus' common law fraud claim must also survive as the Amended Complaint alleges facts that establish, "a material misrepresentation of a fact [by Defendants], knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147 (2009). Also, MJX Plus

---

[4] *See also, National Council of Young Israel v. Wolf, et al.*, 963 F. Supp. 276, 282 (S.D.N.Y. 1997); *Fitzgerald v. Fahnestock & Co., et al.*, 2008 N.Y. Slip Op 1068, 48 A.D.3d 246, 850 N.Y.S.2d 452, 454 (1st Dep't 2008); and *H&H Acquisition Corp. etc., v. Financial Intranet Holdings, et al.*, 1999 U.S. Dist. Lexis 16861, *10 (S.D.N.Y.)

[5] Because MJX Plus has established a prima facie Section 10(b) claim against each Defendant, Defendants' motion to dismiss MJX Plus' Section 20(a) claim must be denied as the only basis offered for dismissal of that claim is the incorrect argument (Moving Brief, p. 11, fn. 6) that Plaintiffs have failed to plead a primary violation of Section 10(b) of the Exchange Act.

189547.4

has adequately pled a claim of negligent misrepresentation as the Amended Complaint contains

facts that demonstrate that: Defendants owed a duty of care due to their "special relationship"

with MJX Plus; Defendants knew or should have known that their representations were false;

Defendants knew or should have known that MJX Plus would rely on those misrepresentations;

and MJX Plus relied on Defendants' misrepresentations to MJX Plus' detriment. *See Hydro*

*Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

      A.     MJX Plus Has Adequately Plead Numerous Written And Oral False Statements
             and Omissions By Defendants And To The Extent That MJX Plus Has Not
             Alleged The "Specific Investments" Made By Defendants, It Is Not Legally
             Required Or, In Fact, Able, To Do So As Such Information Is In The Peculiar
             Knowledge Of Defendants.

In the August Opinion (*2-3), this Court held that the original Complaint did not contain

allegations "regarding what investments were made by the Falcon Fund beginning in September

2005, and no analysis of how such investments were contrary to what had been represented."

However, MJX Plus is unable to set forth more detailed allegations regarding the specific

investments made by Defendants beginning in September 2005 as Defendants never disclosed

such information to MJX Plus. Such detailed information was solely within Defendants'

"peculiar knowledge." The Amended Complaint (AC, ¶¶ 36, 42–44, 49, 55-60, and 64-78) does

set forth in great detail Defendants' numerous misrepresentations that caused MJX Plus to permit

Defendants to invest MJX Plus' $50,000,000 into six of the Fund's portfolios/strategies. Each of

the Fund's portfolios/strategies contained numerous investments. Defendants, not MJX Plus, at

all times relevant to the Amended Complaint, knew of the specific securities held by the Fund

including, for example, the Fund's exposure to risky and highly volatile hybrid adjustable rate

mortgages and private subprime mortgage backed securities. At no time prior to Defendants'

December 6, 2007 admission did Defendants, through their disclosures or oral representations,

inform MJX Plus of the specific investments made by the Fund, and MJX Plus' shares in such

investments, or the degree to which the Fund's portfolios/strategies held investments in high-risk

hybrid mortgage-backed securities and private subprime mortgage backed securities.  For

example, Defendants' Offering Documents and post-investment disclosures simply provided

MJX Plus with, among other things:

- General descriptions of the various investment portfolios/strategies that comprised the Falcon Fund;
- Percentage allocations among the Fund's limited, general investment strategies/portfolios;
- General information for each such portfolio or strategy regarding, for example, rating, leverage and/or duration; and
- General financial information concerning the Fund, its accounting policies, and the Fund's investments in other funds, not specific investments.

AC, ¶¶ 43, 44 and 54-61.

Defendants should not be permitted to escape liability for fraud simply by withholding

information from MJX Plus as to the exact investments that made up the strategies/portfolios in

which the Fund invested.  At all times throughout the period of MJX Plus' investment in Falcon,

Defendants knew of such detailed information.  It is established that where, as here, the specific

facts are in the "peculiar knowledge" of a defendant, plaintiffs are not required to make such

specific allegations.  Similar to the "peculiar knowledge" exception denying a defendant's

reliance on disclaimers to limit liability, a defendant should not be permitted to assert that a

plaintiff failed to plead facts to support a claim when those facts are solely within a defendant's

"peculiar knowledge."  *See Warner Theatre Assoc. Ltd. P'ship.,* 149 F.3d at 136; *Katz,* 2008 U.S.

Dist. Lexis 91449, at * 23.  *See also DaPuzzo, et. al. v. Reznick Fedder & Silverman,* 14 A.D.3d

302, 788 N.Y.S.2d 69, 70 (1st Dept. 2005) (holding that New York law, "requires only that a

claim of fraud be pleaded in sufficient detail to give adequate notice, particularly in

situations where it may be impossible to state in detail the circumstances constituting the fraud,

189547.4

inasmuch as the surrounding circumstances are sometimes peculiarly within the knowledge of the party against whom the claim is being asserted.")

Defendants (Moving Brief, p. 13) also assert that MJX Plus has not met its burden for pleading facts regarding misrepresentations or omissions by Defendants. However, the Amended Complaint (¶¶ AC, 42-80) sets forth, in detail, numerous factual allegations, not conclusory assertions, listing Defendants' misrepresentations or omissions of material facts, and, with sufficient specificity, how Defendants' misrepresentations were false or misleading. *See In re Authentidate Holding Corp. Sec. Litig.*, 2009 U.S. Dist. Lexis 23462, *4, 12-13 (S.D.N.Y.). For example, the Amended Complaint contains, among others, the following allegations demonstrating Defendants' pattern of knowing, fraudulent misrepresentations:

- Oral and written misrepresentations in the Offering Documents and post-investment disclosures that Falcon was a low-risk investment vehicle, and that the Fund was not exposed to highly volatile, high-risk investments such as hybrid adjustable rate mortgages. Such misrepresentations were in direct contradiction to the investments made by the Fund into highly volatile, high-risk mortgage backed securities, hybrid adjustable rate mortgage securities, and subprime mortgage backed securities, collateralized debt obligations backed by non-agency, risky adjustable rate mortgages and subprime mortgages (AC, ¶¶ 42-62, and 66-80);

- Oral and written misrepresentations in the Offering Documents and post-investment disclosures that the Fund would be expertly monitored to control risk, and contained "minimal" holdings in highly volatile, high-risk investments such as hybrid adjustable rate mortgage securities and highly rated subprime mortgage-backed securities. Such misrepresentations were in direct contradiction with Defendants' December 6, 2007 admission (AC, ¶¶ 42-62, and 66-80); and

- Written misrepresentations in the Offering Documents that the Fund was a long-term investment with at least a five-year investment horizon, which were in direct conflict with Defendants' election, against Plaintiffs' express direction, to liquidate the Fund well in advance of their represented minimum five-year investment period (AC, ¶¶ 42-49, and 87-88).

Based on the foregoing, MJX Plus respectfully submits that it has met its burden for pleading misrepresentations or omissions of material facts by Defendants.

189547.4

B.    <u>Plaintiffs Have Adequately Pled Scienter</u>.

It appears that the Court, in the August Opinion, has already rejected Defendants'

argument that MJX Plus failed to plead scienter.  The August Opinion (*1) states that "the Court

wishes to focus on the federal securities law claims in connection with the present motion."

While the Court found fault with other aspects of MJX Plus' federal securities fraud claim in the

original Complaint, it did not hold that MJX Plus failed to adequately plead scienter.  In any

case, MJX Plus respectfully submits that the Amended Complaint (AC, ¶¶ 94 and 96) sets forth

detailed allegations, with sufficient particularity, that each Defendant acted with scienter.  To

properly plead scienter, a plaintiff must show that the defendant possessed "an intent to deceive,

manipulate or defraud.  Such intent can be established 'either (a) by alleging facts to show that

defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness.'[Citation

omitted.]"  *Ganino, et. al. v. Citizens Util. Co., et. al.,* 228 F.3d 154, 168 (2d Cir. 2000).  In

determining whether the element of scienter has been established, the court "must consider, not

only inferences [of scienter] urged by the plaintiff...but also competing inferences rationally

drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314

(2007).  However, when, as is the case here, a plaintiff's allegations of scienter are "cogent and

as at least compelling as any opposing inferences of nonfraudulent intent" then a plaintiff has

met its burden. *Id.*

1.    MJX Plus Has Alleged Facts Showing That Defendants Had Motive And
Opportunity To Commit Fraud.

Citibank received a considerable fee of $500,000 for structuring the transaction (AC,

¶ 37) and considerable ongoing annual fees of .20% of the value of MJX Plus' Falcon Fund

investment, and Citigroup Alternative received significant ongoing monthly management fees of

189547.4

.25 % (3% annually) of the value of MJX Plus' Falcon Fund investment (AC, ¶ 41). In fact, the fees paid by Plaintiffs totaled $4,164,416 (AC, ¶ 41). Additionally, Defendants Citi, Citibank and Citigroup Alternative maintained their own respective investments in the Falcon Fund (AC, ¶ 21) which would have been adversely affected if MJX Plus refused to invest in the Fund or thereafter redeemed its investment in the Fund. All of these factors demonstrate Defendants' motive to commit a fraud upon MJX Plus.

Defendants' receipt of the aforementioned compulsory fees, along with the positive impact on Defendants' personal investments in the Fund drove them to perpetrate, and thereafter to perpetuate, a fraud upon MJX Plus. Had MJX Plus refused to invest in the Fund, or withdrawn or redeemed its investment, Citibank and Citigroup Alternative would not receive the considerable fees and other revenue or income and benefits resulting from MJX Plus' investment in Falcon. *See Dover Ltd., et. al. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 324 (S.D.N.Y. 2006) (finding that plaintiffs properly pled motive and opportunity where facts demonstrated that defendant, by continuing a fraud, "expected to receive half of all profits earned in the Account," and receive direct payments); *Heller v. Goldin Restructuring Fund, LP, et. al.,* 2008 U.S. Dist. Lexis 103354, *50-51 (finding that plaintiff adequately pled scienter by showing, "that Defendants were motivated by a 'concrete and personal benefit,' given not only Defendants' potential receipt of management fees, but also their additional personal financial investment in the under-capitalized Goldin Fund...")

  2. The Facts Alleged Support A Finding Of Defendants' Conscious
    <u>Misbehavior Or, At the Very Least, That Defendants Behaved Recklessly.</u>

In addition to possessing the motive and opportunity to commit the fraud alleged in the Amended Complaint, MJX Plus alleges facts giving rise to a strong inference of conscious misbehavior or, at the very least, recklessness, on the part of Defendants.

189547.4

An inference of scienter can be found when a complaint contains allegations that the defendant, "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Novak v. Merrill Lynch & Co.,* 216 F.3d. 300, 311 (2d Cir. 2000). A defendant's conscious misbehavior can be established when it is shown that a defendant, "ignored obvious signs of fraud." *Hall v. The Children's Place Retail Stores, Inc., et. al.,* 580 F. Supp. 2d 212, 227 (S.D.N.Y. 2008); *In re Veeco Instruments, Inc. Sec. Litig.,* 2006 U.S. Dist. Lexis 13226, **25-26 (S.D.N.Y.) (holding that plaintiffs satisfied the scienter requirement by establishing circumstantial evidence of defendants' knowledge, or reckless ignorance, of accounting improprieties.)

Contrary to Defendants' argument that Plaintiffs have failed to plead facts supporting "strong circumstantial evidence of conscious misbehavior or recklessness" (Moving Brief, p. 19), the Amended Complaint, as set forth more fully above (pp. 9-12), contains detailed facts showing that Defendants knew facts, or had access to information, that clearly demonstrated the inaccuracy of their prior written and oral disclosures. In fact, the Amended Complaint alleges that Defendants admitted as much during the meeting on December 6, 2007 when they informed Plaintiffs that their earlier representations were false. AC, ¶¶ 16 and 77. MJX Plus submits that Defendants' own admission is perhaps the strongest possible evidence of Defendants' conscious misbehavior or recklessness. Defendants' December 6, 2007 statements create a strong inference that Defendants' pre-December 2007 misrepresentations were conscious, knowing and willful or, at the very least, reckless. This, coupled with the precipitous decline in the value of MJX Plus' investment in the Fund, and Defendants' failure to properly monitor the Fund's risks also give

14

189547.4

rise to a strong inference that Defendants were, at the very least, reckless in making the numerous misrepresentations cited in the Amended Complaint.

In addition, as stated more fully below (pp. 20-23) and in the Amended Complaint (AC, ¶¶ 35-41, 121, 122, 126 and 127), Defendants Citibank and Citigroup Alternative each owed MJX Plus a fiduciary duty.  Citibank and Citigroup Alternative were under a duty to monitor and check all information concerning the Falcon Fund as such information related to MJX Plus' investments in Falcon.  Defendants displayed a reckless disregard for the purported accuracy of the Fund's disclosure materials, and recklessly failed to disclose their true facts to MJX Plus notwithstanding their fiduciary duties to MJX Plus and the fact that such facts were known by, or certainly available to, Defendants.

Together, the aforementioned allegations create a strong inference of scienter.

C.    Plaintiffs Have Adequately Pled Loss Causation.

MJX Plus has adequately alleged loss causation and has satisfied, to the best of its ability, the Court's concern that MJX Plus tie its damages to specific investments made by the Fund. August Opinion, *4.  Generally, in order to properly plead loss causation, a plaintiff must demonstrate that its losses were (1) the foreseeable consequences of defendant's alleged misrepresentations or omissions, and (2) caused by the "materialization of the concealed risk." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172-3 (2d Cir. 2005).

The Amended Complaint's factual allegations (AC, ¶¶ 37, 50-51, and 78-80) clearly demonstrate the "causal link" between Defendants' numerous misrepresentations in the Offering Documents and post-investment disclosures, and the approximately $29,000,000 loss in value in MJX Plus' Falcon Fund investment due to such misrepresentations.  In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 36 (2d Cir.2009) (citing Emergent Capital Inv. Mgmt.,

15

189547.4

*LLC v. Stonepath, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). Plaintiffs cannot tie their losses to specific investments made by the Fund because, as discussed above (pp. 9-12) and in the Amended Complaint (AC, ¶¶ 42 – 49, and 54-62), Plaintiffs were <u>never</u> informed of the specific investments made by the Fund. That kind of specific information was withheld from Plaintiffs by Defendants. Therefore, it is not possible at this time (*e.g.*, without discovery) for Plaintiffs to set forth allegations tying their losses or damages to specific non-conforming investments made by the Fund. As set forth more fully above (pp. 5-6, and 9-12), such information was and is solely within Defendants' "peculiar knowledge."[6]

Defendants' intentional misrepresentations satisfy the standard set forth in *Lentell* in that (1) MJX Plus' losses resulting from its decision to invest in the Fund and thereafter not to withdraw, redeem or alter its Falcon Fund investment were a foreseeable consequence of Defendants' misrepresentations of the Fund's investment strategy and management practices and concealment of the actual, not hypothetical or potential, risks associated with an investment in Falcon, and (2) Defendants' misrepresentations caused MJX Plus to invest in, and thereafter maintain its investment in, the Falcon Fund and suffer the aforementioned losses.

Contrary to Defendants' assertions (Moving Brief, p. 17), MJX Plus' losses were not caused by volatility in the market but were directly caused by Defendants' pattern of concealing the risks associated with investing in, and maintaining an investment in, Falcon. Had Defendants honestly represented the extent of the Fund's exposure to nonconforming, risky and highly volatile investments, Plaintiffs would not have invested in the Fund. Where some or all of the

---

[6] Additionally, MJX Plus was not "kept reasonably informed of the nature of the investments and the performance of the investments." August Opinion, * 4-5. As set forth more fully above (pp.10-12) and in the Amended Complaint (AC, ¶¶ 54-62), Defendants' post-investment disclosures, specifically the monthly risk reports that provided MJX Plus with general information concerning leverage, credit rating and the duration of certain portfolios/strategies, did not contain any detailed information concerning the Fund's specific investments. Accurate information detailing the Fund's investment in highly risky and volatile investments such as collateralized debt obligations backed by non-agency, risky adjustable rate mortgages and subprime mortgages, hybrid adjustable rate mortgage backed securities, and high-risk subprime mortgage backed securities, was solely within Defendants' knowledge.

189547.4

risk is concealed by a defendant's misrepresentation or omission, courts have found loss

causation sufficiently pled. S*ee, Nathel v. Siegal, et. al.*, 2008 U.S. Dist. Lexis 86297, *29

(S.D.N.Y. 2008). As MJX Plus became aware of the volatility and decline in the market in

general and concerned with its investment in Falcon, but before MJX Plus had experienced the

most significant losses in its Falcon Fund investment, MJX Plus asked Defendants about the

Fund's investments and the financial health and stability of the Fund. AC, ¶¶ 64-76.

Specifically, on June 27, 2007, MJX Plus contacted Defendants to inquire about the extent of

MJX Plus' exposure, with respect to the Fund, to potential problems in highly volatile, high-risk

investments, including, in particular, the degree to which the Fund was invested in sub-prime

mortgages (AC, ¶ 65). In response, from about June 27, 2007 through December 6, 2007, the

date on which Defendants' admitted that their prior representations were false, Defendants

continued their pattern of misrepresenting to MJX Plus the financial health and security of the

Fund and MJX Plus' investment in Falcon and implored Plaintiff to remain invested in the Fund

(AC, ¶¶ 66-80). As a result, MJX Plus suffered approximately $29,000,000 in losses in the

value of its Fund investment. The Amended Complaint includes the additional factual allegation

that approximately $13,300,000 of MJX Plus' $29,000,000 loss was directly linked to

Defendants' pattern of misrepresentations during the aforementioned period of June – December

2007. AC, ¶78. In any event, the then-current and ongoing financial turmoil does not negate

Defendants' liability for the significant loss in value of MJX Plus' Fund investments that were

caused by Defendants' misrepresentations. The existence of intervening events is a "matter of

proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *Emergent Capital Inv.*

*Mgmt., LLC,* 343 F.3d at 197; s*ee also, City of Sterling Heights Police and Fire Retirement Sys.*

*v. Abbey National, PLC, et. al.*, 423 F. Supp. 2d 348 (S.D.N.Y. 2006).

189547.4

    D.    <u>MJX Plus' Reliance On Defendants' Misrepresentations Was Reasonable.</u>

As set forth more fully above (pp. 5-6), Plaintiffs reasonably relied on Defendants' misrepresentations, and Defendants' boilerplate disclaimers and general risk disclosures do not defeat Defendants' liability for securities fraud, common law fraud and negligent misrepresentation.

III.    THE PURPORTED EXCULPATION CLAUSES THAT DEFENDANTS CLAIM PRECLUDE MJX PLUS' NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY CLAIMS DO NOT APPLY TO SUCH CLAIMS, <u>AND, IN ANY CASE, ARE NOT PROPERLY BEFORE THIS COURT.</u>

Defendants argue that the purported exculpation provisions in Section 10.1 of the Falcon LLC Agreement, and Section 10.1 of the MJX Plus LLC Agreement "expressly" preclude Plaintiff's negligent misrepresentation claim (Claim 4) and breach of fiduciary duty claims (Claims 5 & 6). Moving Brief, p.24.[7] That argument is factually inaccurate and legally unavailing.

First, the Falcon LLC Agreement and the MJX Plus LLC Agreement were not attached to the Amended Complaint, incorporated in it by reference or specifically relied upon in bringing this action. Therefore, consideration of their terms is not proper on this motion to dismiss. *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000).

Second, the purported exculpation provisions do not apply to Plaintiff's claims of breach of fiduciary duty and negligent misrepresentation. It is established that "...the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence and though, with certain exceptions, they are enforceable, such agreements are subject to close judicial scrutiny [citations omitted] [and] [t]o the extent that agreements purport to grant exemption for

---

[7] To the extent that Defendants rely on any purported exculpation provision in the "Falcon 2005 OM" (Moving Brief, p.24), they fail to cite to any provision or specific language, and it is unclear as to what they may be referring. In any case, the arguments set forth in this Section III are asserted against any exculpation provisions in the "Falcon 2005 OM" as well.

189547.4

liability for willful or grossly negligent acts they have been viewed as wholly void [citation omitted]." *Gross v. Sweet*, 49 N.Y. 2d 102, 106, 424 N.Y.S.2d 365, 367 (1979). *See also*, *E+Trade Financial Corp. v. Deutsche Bank AG*, 2008 U.S. Dist. Lexis 46451, *72 (S.D.N.Y.) (stating that exculpatory clauses "'...are enforceable against ordinary negligence claims, but are unenforceable against claims of gross negligence or intentional misconduct' [citation omitted.]"). Such clauses will not even apply to negligence claims unless the intention of the parties is expressed in "...unmistakable language..." (*Gross*, 49 N.Y.2d at 107 (citation omitted)) that is "...absolutely clear..." *Van Dyke Prods. v. Eastman Kodak Co.*, 12 N.Y. 2d 301, 304, 239 N.Y.S. 2d 337 (1963). *See also*, *ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, 2005 U.S. Dist. Lexis 42993, *25 (N.D.N.Y.) ("...as a general rule, courts strictly construe exculpatory clauses against the drafter and do not enforce them beyond their intended scope. [citing *Gross*]"). Furthermore, "...broad or sweeping language in an exculpatory clause is insufficient to effect a release of liability for a party's own negligence..." *Rice v. Harley Davidson*, 2005 U.S. Dist. Lexis 44740, *4-5 (N.D.N.Y.).[8]

   The Defendants themselves state that the purported exculpation provisions are limited to "...merely negligent conduct that does not rise to the level of gross negligence or intentional wrong-doing." Moving Brief, p.5, fn4. It is axiomatic that Plaintiffs' claims of breach of fiduciary duty and negligent misrepresentation are not the same as claims of "ordinary negligence" (*E+ Trade Financial Corp.*) or "mere [ ] negligen[ce]" (Moving Brief, p.5, n4) and

---

[8] The main opinion relied upon by Defendants, *SNS Bank N.V. v. Citibank*, Index No.601989/02 (Sup. Ct., N.Y. C'ty, July 31, 2003), *aff'd*, 777 N.Y.S.2d 62 (1st Dep't 2004) (copy attached as Exh. U to Tambe Decl.) does not contradict the statements of law set forth above and is distinguishable on so many grounds as to be inapposite. For example: *SNS Bank* did not involve the serious allegations of fraud present in the instant case; the defendants in *SNS Bank* did not have contractual privity or any other direct relationship with the plaintiff establishing a fiduciary duty as is present in the instant case; the Court in *SNS Bank* found that the allegations against the defendants therein evinced "mere negligence" (p.11) as opposed to the willful wrongful conduct in the instant case; and the misrepresentation claim in *SNS Bank* was not dismissed based on an exculpation clause but based on a finding that the defendants therein had no duty to disclose.

189547.4

thus are not subject to the purported exculpation clauses. Even if such clauses could, theoretically, apply to the present claims of breach of fiduciary duty and negligent representation, they still would not because the clauses do not even mention "breach of fiduciary duty" or "negligent misrepresentation" let alone "unmistakabl[y]" and "clear[ly]" express any intention of the parties that they include such claims within their scope.

Lastly, even if the claims were "ordinary negligence" claims (which they are not), the purported exculpation clauses would still not be valid because they are far too "broad or sweeping" and unspecific. The subsection of Section 10.1 of both LLC agreements presumably relied upon by Defendants purports to provide a shield from liability:

> (i) For mistakes of judgment or for action or inaction by such Indemnified Party, unless such mistakes, action or inaction arise out of, or are attributable to, the gross negligence, willful misconduct or bad faith of such Indemnified Party;...

Section 10.1(a), Falcon LLC Agreement and MJX Plus LLC Agreement. That subsection does not reference or disclaim liability for Defendants' negligence. Accordingly, the purported exculpation clauses would not even bar claims of ordinary negligence.[9]

IV. DEFENDANTS' CLAIMS THAT MJX PLUS DISCLAIMED A FIDUCIARY RELATIONSHIP WITH CITIBANK AND CITIGROUP ALTERNATIVE APPEAR TO HAVE ALREADY BEEN CONSIDERED AND REJECTED BY THIS COURT AND, IN ANY CASE, MJX PLUS HAS ADEQUATELY ALLEGED FIDUCIARY RELATIONSHIPS WITH BOTH DEFENDANTS.

Defendants assert that purported disclaimers of a fiduciary relationship between MJX Plus and Citibank and Citigroup Alternative, in the Offering Documents, and the covenant not to sue in the Agency Agreement warrant dismissal of MJX Plus' breach of fiduciary duty claims. In addition, Defendants argue that MJX Plus has failed to plead facts to support such claims

---

[9] As argued with respect to the release and covenant not to sue (above, pp. 6-8), the purported exculpation provisions were procured by fraud as part of Defendants' larger fraudulent scheme and are thus not valid. They are also not valid because they were procured by concealment of material facts in breach of Defendants Citibank's and Citigroup Alternative's fiduciary duties to Plaintiffs. *See McGuire Children LLC v. Huntress*, 2009 N.Y. Misc. Lexis 1520, *27-28 (Sup. Ct., Eric C'ty (and cases cited therein)).

189547.4

against Citibank and Citigroup Alternative. However, it appears that the Court has already

considered and rejected this argument, stating: "Defendants also rely on what they consider to be

disclaimers of liability contained in the various offering documents. The court finds no merit in

the disclaimer argument…" August Opinion, *5. As discussed above (pp. 3-5, and 6-8), the

Court also determined that Defendants' argument that "…the action is barred by a 'Covenant Not

To Sue' set forth in section 4 of an agreement entitled 'Administrative Agreement'…is without

merit." *Id.* Defendants should not be permitted to reargue these issues. In any case, even if

Defendants were permitted to reargue these issues, as illustrated below, they are without merit.

Contrary to Defendants' assertions (Moving Brief, pp. 5-7, and 22-23), the Amended

Complaint clearly sets forth facts that support the finding of a fiduciary relationship between

(1) MJX Plus and Citibank, and (2) MJX Plus and Citigroup Alternative. Such facts include,

among other things:

- The long-standing financial relationship between Robert F.X. Sillerman, MJX Plus' former sole managing member, and Citibank, and Citibank's structuring of a series of transactions through which MJX Plus invested in Falcon (AC, ¶¶ 24, 37-39);

- The designation of Citibank as MJX Plus' "Agent" in the Agency Agreement (Agency Agreement § 1; Amended Complaint ¶ 40), and Citibank's duties thereunder (Agency Agreement §§ 2(a) – (d), and 2(f));

- Citibank's possession of peculiar, superior knowledge on the Falcon Fund, and on MJX Plus' investment in Falcon thereby requiring MJX Plus to repose a degree of confidence and trust in Citibank (AC, ¶¶ 49, 64-80); and

- Citibank's control over, and management of, MJX Plus' investment in Falcon (AC, ¶¶ 40, 81-83).

The determination of "whether a fiduciary relationship exists is 'necessarily fact-

specific,' [citation omitted]" such that "'a claim alleging the existence of a fiduciary duty usually

is not subject to dismissal under Rule 12(b)(6).' [Citation omitted.]" *JPMorgan Chase Bank,*

*N.A., v. The IDW Group, LLC,* 2009 U.S. Dist. Lexis 9207, *28 (S.D.N.Y.). Courts have

consistently found the existence of a fiduciary relationship where a commercial business

189547.4

relationship has mirrored that between MJX Plus and Citibank. *See Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, 2008 U.S. Dist. Lexis 43679, *9-10 (S.D.N.Y.) (finding that commission of an active fraud may be a "special circumstance" that gives rise to a fiduciary duty between parties in a conventional business relationship); *Penato v. George, et al.*, 52 A.D.2d 939, 941, 383 N.Y.S.2d 900, 905 (2nd Dept. 1976) (holding that a fiduciary relationship, "might be found to exist...where confidence is based upon prior business dealings"); *Kirby v. Coastal Sales Ass'n Inc.*, 82 F. Supp. 2d 193, 202 (S.D.N.Y. 2000) (finding that an agent typically owes a fiduciary duty to its principal); *Am. Tissue Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. 2004) (finding that investment banks have a fiduciary duty to their clients when either the client reposes trust or confidence in the investment bank that grants the bank an advantage in relating to its client, or where the bank assumes control and responsibility over client's account.)

As for Citigroup Alternative, as the Investment Manager of the Fund (AC, ¶¶ 35 and 48(b)), it had discretionary authority over the Falcon Fund and its investment activity.[10]  This created a principal-agent relationship between itself and investors in Falcon, including MJX Plus. *See Lowenbraun, et ano. v. L.F. Rothschild, et al.*, 685 F. Supp. 336, 342 (S.D.N.Y. 1988).  As set forth more fully above (pp. 5-6, and 9-12), Citigroup Alternative also possessed superior, peculiar information and knowledge on the Falcon Fund.  Due to Citigroup Alternative's superior knowledge regarding MJX Plus' investment, MJX Plus was required to repose a trust and confidence in Citigroup Alternative thereby further establishing a fiduciary relationship. *See The Pension Comm. Of the Univ. of Montreal Pension Plan v. Banc Of America Sec. LLC,* 592 F.

---

[10] The Offering Memorandum clearly states that, "[t]he Investment Manager [Citigroup Alternative] will manage the Portfolios.  The Members will not be entitled to make decisions with respect to the management, disposition or other realizations of any investment made by a Portfolio, or regarding the Portfolios' business and affairs.  Consequently, the success of the Portfolios will depend, in large part, upon the skill and expertise of the Investment Manager and the selected Advisors."  (Offering Memorandum, p.14, and AC, ¶¶ 48(b)-(c) and 125.)

189547.4

Supp.2d 608, 624 (S.D.N.Y. 2009) ("a fiduciary duty may arise where…'one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party' [Citation omitted]").

As set forth in greater detail above (pp. 5-6), the purported disclaimers of liability in the Offering Documents, including any purported disclaimer of liability for breach of a fiduciary duty, do not insulate Defendants from liability for their knowing fraudulent misrepresentations. In addition, the Agency Agreement does not contain any language whatsoever disclaiming a fiduciary relationship between the parties. Furthermore, any purported disclaimer of a fiduciary relationship in the Offering Documents and the Agency Agreement is in direct contradiction to the advice and direction Citigroup Alternative's representatives gave MJX Plus concerning its investment during the period from in or about June 2007 through December 2007. AC, ¶¶ 64-78. Based on Citigroup Alternative's position as the Fund's Investment Manager and Citibank's role as MJX Plus' agent, MJX Plus had reposed a trust and confidence in Defendants, and reasonably relied on the information it received from them concerning Falcon. *See Wiener, et al. v. Lazard Freres & Co. et al.,* 241 A.D.2d 114, 121, 672 N.Y.S.2d 8, 14 (1st Dept. 1998).[11]

## V.    PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM AGAINST CITIBANK FOR BREACH OF THE AGENCY AGREEMENT.

The Amended Complaint contains factual allegations that clearly set forth Citibank's duties under the Agency Agreement to strictly follow and, by extension, maintain, Plaintiffs' share allocation instructions throughout the period of MJX Plus' investment in Falcon and the term of the Agency Agreement. AC, ¶¶ 81-88 and 128-132. Specifically, Plaintiffs have alleged that pursuant to the Agency Agreement, Section 2 "Duties of the Administrative Agent," Subsection d, Citibank, as Administrative Agent, was obligated "[p]ursuant to the instructions of

---

[11]  As for the covenant not to sue, as set forth in greater detail above (pp. 3-5, and 6-8), it is not valid and does not bar Plaintiffs' claims for numerous reasons.

189547.4

MJX Plus [to] take action to effect changes in composition of the Enhanced Portfolio." AC,

¶ 81. Plaintiffs have further alleged that: in an e-mail of December 31, 2007 Plaintiff MJX Plus

gave Citibank specific instructions to change the composition of Plaintiff's investment in the

Falcon Fund (AC, ¶ 83); in an email of the same date, Defendants acknowledged receipt of those

instructions <u>and</u> stated that Defendants would make the requested changes effective January 2,

2008 (AC, ¶ 84); and that Defendants breached the Agency Agreement by failing to make the

specified changes and thereafter failing to rebalance Plaintiffs' Falcon Fund investment to reflect

the December 31, 2007 composition change instructions (AC, ¶ 85). Plaintiffs have also alleged

that Citibank further breached the Agency Agreement by failing to follow MJX Plus' explicit

and repeated instructions that Defendants strictly adhere to the representations made by

Defendants in their Offering Documents concerning the Fund's five-year investment horizon and

not sell MJX Plus' interest in the Fund and not liquidate the Fund. AC, ¶¶ 87-88.

Defendants' argument that, "Plaintiffs attempt to conflate the Enhanced Portfolio with the

Falcon Investment" (Moving Brief, p. 24) is unavailing. The Enhanced Portfolio, as defined in

the Agency Agreement (Section 4.f), explicitly included MJX Plus' "investment in Falcon

Strategies Two LLC…" In fact, the Falcon Fund is the only fund referenced by name in the

entire Agency Agreement. If the Enhanced Portfolio included Plaintiffs' investment in the

Falcon Fund, then Citibank's contractual obligation to follow MJX Plus' "instructions" to "effect

changes in composition of the Enhanced Portfolio" (Agency Agreement, Section 2.d) naturally

included the obligation to follow instructions to effect changes in the composition of MJX Plus'

investment in the Falcon Fund. <u>Defendants directly acknowledged this obligation in their email</u>

<u>of December 31, 2007 confirming receipt of MJX Plus' instructions to change the composition</u>

<u>of its investment in the Falcon Fund and stating that those instructions would be carried out.</u>

189547.4

Citibank's responsibility to follow MJX Plus' instructions to reflect specific percentage allocations unquestionably included the duty to thereafter rebalance MJX Plus' investment to maintain the specified percentages. To conclude otherwise would render the instructions and the contractual provision under which they were given meaningless in that context. This is the case because, for example, as the value of MJX Plus' investments in the Fund changed, the percentage allocation of the composition of MJX Plus' interest in the Fund also changed. Therefore, without rebalancing, MJX Plus would be required to give reallocation instructions over and over again simply to maintain the same percentage allocation. This would be contrary to standard industry practice and would produce an absurd or, at the very least, commercially unreasonable, result. As stated in *In the Matter of Lipper Holdings, LLC v. Trident Holdings, LLC*, "[a] contract should not be interpreted to produce a result that is absurd [citation omitted], commercially unreasonable [citations omitted], or contrary to the reasonable expectations of the parties [citation omitted]." 1 A.D.3d 170, 766 N.Y.S.2d 561, 562 (1st Dep't 2003).[12] It is similarly clear that the Agency Agreement's broad requirement that Citibank follow MJX Plus' "instructions" concerning its investment in the Fund, included the obligation to follow MJX Plus' repeated instructions not to sell its interests in the Fund without its consent and approval. Therefore, Plaintiffs respectfully submit that Defendants' motion to dismiss Plaintiffs' seventh claim must be denied in its entirety.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit that Defendants' Motion to Dismiss the Amended Complaint should be denied in all respects.

---

[12] *See, also, BDO Seidman, LLP v. Mark E. Bloom*, 2004 NY Slip Op 514194U, 5 Misc.3d 1018A, 799 N.Y.S.2d 159, 160 (Sup. Ct. N.Y. Ct'y 2004) (stating that when construing a contract "... a practical interpretation should be given to the language employed so that the parties' reasonable expectations are realized.").

189547.4

Dated:    December 16, 2009
          New York, New York

Respectfully Submitted,

DORNBUSH SCHAEFFER
STRONGIN & VENAGLIA, LLP

By: _____
    Richard J. Schaeffer (RS-0019)
    J. Cody Fitzsimmons (JF-5272)
    Adler Bernard (AB-0233)

747 Third Avenue
New York, New York 10017
212-759-3300
Attorneys for Plaintiffs
MJX Plus LLC and
MJX Special Opportunities LLC

26

189547.4